GEORGE SALTER *vs.* RHODE ISLAND COMPANY.

PROVIDENCE—FEBRUARY 24, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)  *Evidence.   Offers of Compromise.   New Trial.*

Offers of compromise are in the nature of privileged communications and can not be used against the party making them as evidence of admission of liability.   The admission of such evidence is reversible error.

TRESPASS ON THE CASE for negligence.   Heard on petition of defendant for new trial, and granted.

DUBOIS, J.   This is an action of trespass on the case for

negligence of the defendant in letting its electric car collide with the baker's cart of which the plaintiff was the driver, and thereby causing him injury.

The evidence concerning the primary cause of the accident was conflicting, and neither party admitted liability therefor. One of the grounds for a new trial relied upon by the defendant is based upon the persistent attempt of the attorney for the plaintiff to bring before the jury offers of settlement, claimed to have been made by officers or agents of the defendant, which the presiding justice had properly excluded as inadmissible.

That this action upon the part of the plaintiff's counsel was deliberate appears from the fact that the attempt was first made and abandoned during the examination of the plaintiff, and afterwards was brought to a successful conclusion in the examination of the plaintiff's wife, as appears from the following extracts from the record of their testimony:

Testimony of George Salter:

"122 Q.  Now do you remember whether or not any of the railroad company officials called to see you?  Objected to by Mr. Hayes.  123 Q.  Soon after the collision?  Objected to by Mr. Hayes.  WITNESS: Yes, sir.  124 Q.  Have you any recollection of their being at your house?  Objected to by Mr. Hayes.

"MR. HAYES:  It is perfectly immaterial whether they did or not.  As a matter of fact, I presume the railroad officials send someone to every accident that occurs.  It has nothing to do with the case. '

"THE COURT:  I don't see the object, unless there was something done there to express an opinion in regard to the accident.  Some party had knowledge of how this thing occurred, whether the company were at fault or not.  It has been held in some instances that where a station-master had made some statement in regard to the accident or how it occurred on a steam railroad, that the remarks that he made would bind the company at that time, because he had something to do besides attending to the company; that he was acting then as the agent of the company, and that would bind them.  But the mere question of a person going to see a person after their

injury, may be a question of humanity and may not be. I
don't think it would bind the company.

"125 Q. You have never received anything from the cor-
poration, the company, compensation or settlement or anything
of that kind? A. No, sir."

Testimony of Emma Salter:

"60 Q. Can you tell us whether or not anyone from the
railroad company called to see him? Objected to by Mr.
Hayes.

"WITNESS: Yes, sir.

"MR. HALLETT: Why do you object to that?

"MR. HAYES: Because it has absolutely nothing to do with
this case.

"61 Q. You were present with your husband all the time?
A. Yes, sir. 62 Q. Now, at any time, did you go to the
company's office? A. Yes, sir. 63 Q. How did you come—

"MR. HAYES: I don't know what my Brother Hallett is
endeavoring to do, but it certainly is improper to have such a
line of examination at this time. If he wants to suggest any-
thing he thinks is proper, let him tell me and I will admit it;
but as to forming an inference drawn from the question asked—

"Mr. HALLETT: Mr. Hayes is drawing the inference. I
asked her if she went to the company's office, and how she came
to go there. Perhaps the company invited her.

"THE COURT: If the object of the conversation was for the
purpose of adjusting this matter, then it was improper to tell
it; that you can not tell.

"MR. HALLETT: Well, I don't know what that would lead
up to.

"THE COURT: She says she did go there, and I wouldn't
pursue it too close; any questions for adjustments or negotia-
tions.

"MR. HAYES: There are no negotiations for settlement,
otherwise we wouldn't be here; and therefore it seems im-
proper to us—such questions.

"THE COURT: Your company might attempt to settle any
case, and if you didn't agree then you would be here. It is
not improper for you to be here because you didn't try to. I

don't think it is proper to pursue it; I have ruled in your
favor.  .  .  .

"67 Q.   You don't know of any settlement that the com-
pany has made with you or your husband?   A.   No, sir; they
asked to settle two or three times.   68 Q.   Now I will ask you
whether before these injuries—

"MR. HAYES: I would like, for the record's sake, an excep-
tion to the question and an exception to the answer.

"MR. HALLETT:   I will withdraw them.

"MR. HAYES:   I won't have it withdrawn.   You succeeded
in getting an answer, which was quite improper.   There has
not been the slightest suggestion of liability on our part in this
case.   Now it makes no difference what was done or attempted
to be done, it ought not to go upon the record as prejudicing
us in our case; and the answer, as has been made, which my
brother did his best to bring out, and finally succeeded, is of
itself prejudicial.

"THE COURT:   I have ruled against the admissibility of
those questions.   Note Mr. Hayes's exception to the question
and the answer.

"MR. HALLETT: I know of certain facts in this case, I know
of certain interviews.   Now I don't know whether the com-
pany ever settled or not, I know these interviews took place;
now I want to find out from this witness whether the com-
pany, after those interviews, settled.

"MR. HAYES:   If they did you wouldn't be here.

"MR. HALLETT:   I might;  you might have got a settlement
from some misrepresentation or other.

"THE COURT:   I will state, counsel, that argument here
precedes the ruling of the court.   Your exception to the
question is noted.   Your exception to the answer is also
noted."

(1)     It is well-settled law that offers to compromise or to buy
peace or cessation of litigation are favored by the law; such
communications are privileged, are confidential, and if un-
successful can not be used against the party making them as
evidence of an admission of liability.   As ignorance of the
law excuses no one, all persons, including members of the bar,

.are presumed to know the law; the counsel should have rec-
·ognized it, especially after his attention had been directed to it
by the court.   His concluding remarks, hereinbefore referred
to, indicate that he was unwilling that the jury should lose the
·effect of the objectionable question and answer, even after he
had withdrawn them.

To measure the effect of such misconduct upon the verdict
in a case where the evidence for the plaintiff was not conclusive
is beyond the power of the court, and although it imposes
hardship upon the parties to require a retrial of the cause, it is
the only remedy for the correction of such abuses.

Petition for a new trial granted, and case remanded to the
Common Pleas Division for further proceedings.

*W. B. W. Hallett and H. W. Kimball*, for plaintiff.

*Henry W. Hayes, Frank T. Easton, Lefferts S. Hoffman, and
Alonzo R. Williams*, for defendant.