**Donna J. LORD et al.**

v.

**Edward MAJOR, Jr., et al.**

**No. 98–47–Appeal.**

Supreme Court of Rhode Island.

May 14, 1999.

---

## 698

John J. Hogan, Steven M. Richard, Providence, for plaintiff.

James H. Reilly, Providence, Marvin H. Homonoff, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

### OPINION

PER CURIAM.

A fatal car accident lies at the heart of this appeal. A motorist died after his vehicle collided with the rear end of a tractor trailer on Wampanoag Trail in East Providence. Donna J. Lord, individually, as surviving spouse of the decedent motorist, Stephen E. Lord (decedent), and as natural parent and guardian of Stacy Lord, and Scott Lord (collectively, the plaintiffs), appeals from a Superior Court summary judgment in favor of the defendants, truck driver Edward Major, Jr. (Major) and trailer owner Joseph G. Leonardo, Inc. (Leonardo). In reaching her decision, the motion justice concluded that no issues of material fact existed concerning whether Major or Leonardo had breached a duty of care which contributed to the death of the decedent in this accident. We ordered the parties to show cause why we should not decide this appeal summarily. No such cause having been shown, we proceed to do so at this time.

### Facts and Travel

We garner the facts of this case from the parties' summary-judgment submissions. Leonardo was in the business of selling sand, gravel, and construction materials. Its place of business was located at 1279 Wampanoag Trail in East Providence. On October 7, 1993, Major was using a tractor truck that he owned to haul one of Leonardo's trailers. The parties disagree over whether Major was an employee of Leonardo or an independent contractor. For the purposes of reviewing the Superior Court's summary judgment in their favor, however, defendants concede that we should assume that Major was acting as Leonardo's agent when the accident occurred.

On the day of the accident, Major had filled the trailer with sand and gravel that he had obtained from Leonardo's Wampanoag Trail facility. As a result, the loaded trailer weighed approximately 95,600 pounds. After picking up these materials at Leonardo's facility, Major's tractor trailer exited therefrom, turned onto Wampanoag Trail (a four-lane highway running north and south), crossed over into the far-left passing lane, and began heading south. In preparation for taking the first available U-turn, Major activated the tractor trailer's left-hand turn signal. Suddenly, within seconds after Major entered this left passing lane, the decedent's car collided with the rear end of the tractor trailer approximately sixty feet from the spot where Major had exited from Leonardo's facility.[1] Major stated that he was traveling at approximately fifteen miles per hour at the time of the collision.[2] The decedent suffered fatal injuries.

The only other witness to the collision (besides decedent) was Mary L. Dwyer

---

1. According to Leonardo, "[m]easurements taken at the accident scene indicated that the rear of the trailer was 60 feet from the Leonardo driveway at the point of impact."

2. Major described the accident thusly in his answer to plaintiffs' interrogatories:
"I was operating a truck filled with gravel. I had exited Leonardo, Inc. at 1279 Wampanoag Trail, East Providence, Rhode Island. I had stopped at the intersection to the Wampanoag Trail, put my left hand blinker on as I was intending to get into the left hand lane to make a U-turn to head in a northerly direction and proceeded on to Wampanoag Trail to the far left lane. My blinkers were still on and when I was approaching the U-turn and another vehicle struck my vehicle in the rear. The Plaintiff's motor vehicle was traveling at a high rate of speed and struck my vehicle in the rear causing my rear tire to blow and one of the tires came completely off the truck bending the rim to the axle. This caused me to stop my trailer suddenly."

(Dwyer), who saw the accident as she likewise was traveling south in her own vehicle on the Wampanoag Trail. Her statement to the East Providence police was attached to Leonardo's memorandum in support of summary judgment.[3]

In 1996, plaintiffs filed a wrongful-death action in Superior Court against Leonardo, Major, and Edward Major & Son, Inc.[4] Leonardo filed a cross-claim against Major and Major & Son, Inc., seeking contribution or indemnification. Following pretrial discovery, both Major and Leonardo filed motions for summary judgment, arguing that they had violated no duty of care owed to the decedent in these circumstances. A Superior Court motion justice granted Leonardo's motion on the basis that it owed no duty to the decedent based upon the location of the facility's driveway on its property. The motion justice also granted defendant's motion for summary

judgment based upon the dearth of any evidence indicating that Major negligently operated the truck. To the contrary, the Superior Court noted that all of the evidence presented in connection with the summary-judgment motion indicated that the decedent had failed to drive at a safe speed, to maintain proper control of his vehicle, and to keep a proper lookout before crashing his vehicle into the rear end of the tractor trailer. Judgment entered for Leonardo and Major, and plaintiffs filed this appeal.

Notwithstanding the evidence of the decedent's negligence, plaintiffs' chief argument on appeal is that the motion justice overlooked or misconceived the legal significance of Major's slow driving in the passing lane of this highway. They argue that a jury could infer from this evidence that Major was comparatively negligent to

---

3. Dwyer's statement to the police reads as follows:

"I was traveling southerly on the Wampanoag Trail earlier this date and I had been in the rightmost travel lane doing about 50 miles per hour when I became aware of a tractor trailer truck ahead of me in the left lane, also travel[ing] south. I also now became aware of a vehicle coming up behind mine but in the left lane and it was driving at a very high rate of speed.

"This vehicle that was coming up behind me was going so fast that I knew that the position of the truck that was ahead of me and in the same lane as this other car was going to be in the way of this speeding car so I immediately pulled off to the breakdown lane and slowed down so that this car could change into my lane. I was worried that it was going to make this lane change and I would be put in danger and also to the fact that the way it was coming up behind this truck and closing [sic] the gap of roadway between it and the truck that I just knew it had to change lanes. But the vehicle never did change lanes it just drove right into the truck. I never saw any brake lights come on from this vehicle before the crash, I only saw it drive right into the truck as if maybe the vehicle driver was passed out or asleep maybe.

"As soon as the two vehicles collided the vehicle spun off over to the right lane and the truck stayed in the lane it had been in, I stopped my vehicle at this point and got out

and went over to the crashed vehicle and tried to comfort the driver until help arrived.

"As I said before I was driving about fifty (50) mph and this vehicle was greatly exceeding that, I drive this road alot and see plenty of speeding vehicles but never have I seen a car being driven this fast anywhere.

"I can only guess that at the time I first saw the truck in the left lane it was completely in the leftmost lane and I did not seem to be getting close to it very quickly, but it was close enough to my vehicle that I realized that the speeding motor vehicle was only going to be able to get in my lane after it passed me if I was to move out of the lane and allow it space to maneuver around the truck, which it never did."

4. In their complaint, plaintiffs averred that the truck was registered to Edward Major & Son, Inc., a Rhode Island corporation with its place of business in Warwick. Major filed an individual answer, in which he denied all of these assertions, but did not indicate whether or not such a corporation existed. No pleadings have ever been filed on behalf of Edward Major & Son, Inc., and the Superior Court rendered the judgment in this case only in favor of Major, individually, and Leonardo. No Rhode Island Superior Court Civil Procedure Rule 54(b) certification was sought nor obtained, and so we presume that no such corporation was ever made a party to this action.

some degree in the manner in which he was operating the tractor trailer when the accident occurred. They also claim that, given this evidence potentially showing Major's negligence, issues of material fact exist regarding the relationship between Leonardo and Major, and the extent to which Leonardo exercised control over the vehicle and/or Major such that Leonardo should be held liable for Major's negligence. Because defendants concede, for the purposes of this argument, that an agency relationship existed between Major and Leonardo when the accident occurred, we shall assume this to be so. As a result, the existence vel non of evidence from which a jury could infer Major's negligence becomes the dispositive liability factor for both defendants in our review of this summary judgment.

### Analysis

■ We review the grant of a summary-judgment motion on a de novo basis, applying the same criteria as the trial court. *See Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). The only time "that summary judgment is appropriate [is] when the record, viewed in the light most favorable to the party opposing the motion, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

■ In the case at bar, the motion justice determined that the parties' summary-judgment submissions revealed no evidence of Major's negligence. She noted that only three individuals witnessed the collision: the decedent, Major, and Dwyer. Major's answers to interrogatories indicated that he had exited from the driveway to the Leonardo facility, entered the left lane on Wampanoag Trail, and was traveling in a southerly direction at approximately fifteen miles per hour immediately prior to the collision. Dwyer's statement to the police noted that the decedent had been traveling at an extremely high rate of speed, and that Dwyer herself had pulled

into a breakdown lane to allow the decedent to change lanes and thereby avoid colliding with the tractor trailer. Although a rear-end collision creates prima facie evidence of the second car driver's negligence, *see Barnes v. Quality Beef Co.*, 425 A.2d 531, 536 (R.I.1981), it does not foreclose the issue of liability, *see Galusha v. Carlson*, 120 R.I. 204, 207, 386 A.2d 634, 636 (1978). Nevertheless, applying this presumption, as well as the uncontradicted evidence from the two surviving eyewitnesses, the motion justice concluded that the only evidence of negligence was that of the decedent's. Upon reviewing the record, and after indulging all inferences in plaintiffs' favor, we respectfully disagree with this conclusion.

■ Although the evidence of the decedent's negligence is strong, if not overwhelming, a reasonable jury also could conclude that, under these circumstances, Major too was negligent, at least to some degree, in operating the tractor trailer "at such a slow speed [fifteen miles per hour] as to impede or block the normal and reasonable movement of traffic." Minimum speed, G.L.1956 § 31–14–9(a). When the accident occurred, Major's tractor trailer was traveling in the passing lane at fifteen miles per hour on a highway where the posted speed limit was fifty miles per hour. At oral argument, counsel for defendants conceded that Major's tractor trailer was still several hundred feet from the exit lane for the U-turn when he was struck by the vehicle driven by the decedent. Because the accident occurred only sixty feet from the driveway exit to Leonardo's facility, Major's vehicle must have crossed over into the left passing lane immediately after exiting from Leonardo's facility. Given the curving configuration of the road in this section of the Wampanoag Trail, and thus, the restricted visibility of the traffic ahead of motorists traveling south thereon, the decedent most likely would have had very little time to react to the lumbering presence of the tractor trailer in the passing lane even if he had been proceeding at the speed limit. Under

these circumstances, a reasonable jury could determine that, notwithstanding the decedent's negligence, Major was also negligent in operating the tractor trailer in the highway's passing lane at such a reduced rate of speed. In light of the fact that Major was driving a tractor pulling a fully loaded, 95,600–pound trailer weighted down with sand and gravel, and that, so soon after exiting from Leonardo's facility, he was attempting to utilize this first U-turn (instead of gathering speed and proceeding to the next available turnabout located farther south on Wampanoag Trail), it would not be too great a stretch for a reasonable jury to allocate some percentage of the distributable negligence to Major's side of the ledger.

The plaintiffs also claim that the motion justice erred in granting summary judgment to Leonardo on their vicarious-liability claims. Initially, the plaintiffs based their primary liability claims against Leonardo on a theory that Leonardo had negligently constructed and maintained its driveway onto the Wampanoag Trail, and that Leonardo had failed to take necessary measures to ameliorate the safety risks that the driveway's location posed to motorists on the Wampanoag Trail after trucks exited from its facility.[5] In its motion for summary judgment, Leonardo argued that Major's truck had exited from the Leonardo driveway safely before the collision, and that Leonardo had no duty to control traffic on the Wampanoag Trail. The plaintiffs, however, adduced no further evidence on their premises-liability theory in response to Leonardo's summary-judgment motion, and ultimately,

they abandoned these claims vis-à-vis Leonardo during oral argument on appeal. Thus on remand, the Superior Court shall limit Leonardo's exposure to the adjudication of claims based upon its alleged vicarious liability for Major's claimed negligence.

### Conclusion

For these reasons, we conclude that the motion justice erred in granting summary judgment based upon the absence of any evidence showing that Major was negligent. Genuine issues of material fact exist in this case regarding Major's alleged comparative negligence and Leonardo's vicarious responsibility for any such negligence based upon its putative employment or agency relationship with Major. Accordingly, we sustain the plaintiffs' appeal, vacate the summary judgment, and remand the papers in this case to the Superior Court for further proceedings consistent with this opinion.

---

5. With respect to Leonardo's duty to the decedent, plaintiffs averred in their complaint that "Leonardo's driveway was constructed and maintained in such a way that drivers rounding the curve in the Wampanoag Trail could not easily see vehicles exiting the Leonardo facility," and that "Leonardo had not undertaken the necessary measures to negate the safety risks posed to drivers on the Wampanoag Trail by vehicles exiting its facility." Thereafter, in their answer to Leonardo's interrogatory specifically requesting them to describe with particularity all facts supporting

the above allegations, plaintiffs stated: "The Leonardo gravel facility is located in close proximity to the Forbes Street intersection. Leonardo should have been aware of the fact that southbound drivers on the Wampanoag Trail cannot see vehicles exiting from its facility as they approach and drive through the Forbes [S]treet intersection. The plaintiff intends to explore in discovery additional facts concerning the construction of the driveway and Leonardo's knowledge of the dangers posed by it."