**Mary Ann VOTOLATO, individually and as the Administratrix of the Estate of Cherie M. Tavares**

v.

**William MERANDI et al.**

**No. 98–197–Appeal.**

Supreme Court of Rhode Island.

March 17, 2000.

William P. Devereaux, Providence, for Plaintiff.

Joseph F. Penza, Jr., Warwick, Richard G. Riendeau, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

In this appeal we review the granting of a motion for new trial by a trial justice because of an alleged error of law committed by him during trial.

## I

### Case Facts and Travel

The plaintiff, Mary Ann Votolato (Votolato) individually, and as the administratrix of the estate of her daughter, Cherie M. Tavares (Tavares), had sued the City of Providence (the city), and one of its police officers, William Merandi (Merandi), for negligence and resulting damages arising from an automobile collision involving a vehicle in which Tavares, aged sixteen, was a passenger, and a police vehicle being operated by Merandi. At the time of the collision, shortly after 6 p.m. on October 4, 1994, Merandi was responding to a call for assistance from another Providence police officer. In responding to that call, Merandi, operating his police vehicle, was traveling north on Francis Street in Providence, which at the time was heavily congested with traffic, while Candace Parillo (Parillo) was driving a Chevrolet Blazer sport utility vehicle traveling east toward the intersection of Francis Street and Memorial Boulevard. Parillo had just exited the Route 6 and Route 10 interchange ramp. Both vehicles entered the intersection of Francis Street and Memorial Boulevard at about the same time, and Merandi's police cruiser struck the right rear passenger side of the Blazer. The Blazer flipped over several times and a back-seat passenger, young Tavares, was partially ejected from the vehicle and suffered massive injuries to her head and torso. She was later pronounced dead at Rhode Island Hospital.

On July 7, 1995, Votolato, Tavares's mother, suing for herself, as well as in her capacity as the administratrix of her daughter's estate, filed the instant civil action, naming as defendants the city, Merandi, the Westin Hotel, General Motors, Setina Manufacturing and Marshall Contractors. Her civil action complaint alleged negligence on the part of Merandi, the city, the Westin Hotel and Marshall Contractors; negligence, breach of implied warranty of merchantability and breach of implied warranty of fitness on the part of General Motors, maker of Merandi's police cruiser; and negligence, breach of implied warranty of fitness and strict products liability on the part of Setina Manufacturing, maker of the "push bar" mounted on the front portion of Merandi's police cruiser. Summary judgment ultimately was granted to all defendants, except Merandi and the city.

Following a jury trial in January 1998, the jury returned a verdict for the defen-

dants, Merandi and the city, and against the plaintiff. Pursuant to Rule 59 of the Superior Court Rules of Civil Procedure, the plaintiff moved for a new trial, arguing *inter alia,* that the trial justice had erred in allowing evidence concerning a $95,000 settlement that had been reached between the plaintiff and the insurance carrier for Parillo, the driver of the Blazer involved in the collision.[1] The trial justice rejected all the grounds asserted by the plaintiff in her motion for a new trial, except with respect to an assertion of prejudice caused by the admission of the $95,000 settlement. On that assertion, the trial justice concluded that his cautionary instructions to the trial jury to disregard the evidence of the settlement had been inadequate to eradicate the prejudice caused by admission of the settlement amount and "that the Court did commit an error of law in permitting the evidence to be entered." Accordingly, citing *Marcello v. K–Mart Corp.,* 712 A.2d 882 (R.I.1998) (order), he granted the plaintiff's motion for a new trial pursuant to Rule 59(a)(1). The defendants timely appealed to this Court.

In their appellate submissions, the defendants claim that the trial justice erred in granting the new trial because he committed an error of law at trial. They contend that this Court should adopt and apply a *de novo* standard of review in considering the trial justice's grant of the new trial. Under such a *de novo* review, the defendants assert, this Court should then conclude that the trial justice erred in determining that his admission of the evidence of the $95,000 settlement agreement was an error of law. They argue that the settlement evidence was properly admitted to secure the necessary offset of the $95,-000 against any potential jury award in favor of the plaintiff, or alternatively, was

admissible for purposes of impeachment and to show bias.[2] Finally, the defendants assert that even if the admission of the settlement did constitute error, such an error was readily cured by the trial justice's cautionary instructions to the jury and constitutes harmless error. We address now those appellate contentions.

## II

### The Standard of Review

The defendants first assert that a motion for a new trial granted pursuant to amended Rule 59(a)(1) must be reviewed *de novo,* as opposed to our historically more deferential standard of review applied to a trial justice's decision to grant or deny a motion for a new trial.

Rule 59, as amended, provides that:

"(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) *in an action in which there has been a trial by jury, for error of law occurring at the trial* or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state." (Emphasis added.)

Traditionally, in our review of a trial justice's decision to grant or deny a new trial, we have held, "that if a trial justice reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his [or her] independent judgment, his [or her] determination either granting or denying a motion for new trial will not be disturbed unless he [or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Kurczy v. St. Joseph Veterans Association, Inc.,*

---

1. The plaintiff also alleged in her Super.R.Civ. 59 motion that the jury verdict was against the weight of the evidence presented at trial, that the trial justice improperly instructed the jury and that the defendants exercised peremptory challenges to potential jurors in violation of the plaintiff's civil rights.

2. We specifically note that the city propounds the impeachment theory, while Merandi propounds the setoff theory for the admission of the settlement evidence. However, for purposes of this appeal, we will treat both arguments as having been made by the defendants collectively.

713 A.2d 766, 770 (R.I.1998) (quoting *Pantalone v. Advanced Energy Delivery Systems, Inc.*, 694 A.2d 1213, 1216 (R.I.1997)).

However, we are cognizant of the 1995 amendment to Rule 59 that significantly expanded the traditional grounds for the grant of a new trial and served to conform our rule to its federal counterpart. This rule posits that "[a]ny error of law, if prejudicial, is a good ground for a new trial." 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* : Civil 2d § 2805 at 55 (1995). We also note "that federal-court interpretations of a procedural rule that is substantially similar to one of our own state rules of civil procedure should serve as a guide to the construction of our own rule." *Hall v. Insurance Co. of North America*, 727 A.2d 667, 669 (R.I.1999).

Thus, we begin our analysis by observing that the United States Supreme Court has addressed the standard for review of an alleged error of law occurring at trial, stating that "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). *See also Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir.1997) (recognizing that an error of law constitutes an abuse of discretion, citing *Koon, supra.*)

■ We believe the federal standard to be in accord with our own well settled standard concerning a trial justice's abuse of discretion in a motion for new trial, *Kwarciak v. Star Market*, 506 A.2d 545, 548 (R.I.1986); *Brimbau v. Ausdale Equipment Rental Corp.*, 120 R.I. 670, 672,

389 A.2d 1254, 1255 (1978), and we believe, like the federal courts, that "[this] abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon*, 518 U.S. at 100, 116 S.Ct. at 2048, 135 L.Ed.2d at 414. We further believe that for this Court to determine whether a trial justice has abused his or her discretion concerning the grant or denial of a new trial based on an error of law occurring at the trial, we must review that grant and the accompanying trial record before us *de novo*, as we do for other questions of law.[3] *See, e.g., Lord v. Major*, 729 A.2d 697, 700 (R.I.1999) ("[w]e review the grant of a summary-judgment motion on a de novo basis"); *Fitzpatrick v. Tri–Mar Industries, Inc.*, 723 A.2d 285, 286 (R.I.1999) ("It is well settled that this Court reviews de novo a claim that a trial justice misinterpreted a statute."); *Nonnenmacher v. City of Warwick*, 722 A.2d 1199, 1202 (R.I.1999) ("the determination of whether a contract exists is a question of law that this Court reviews *de novo* "); *Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 325 (R.I.1997) ("Whether a party has agreed to be bound by arbitration is a question of law subject to this court's de novo review.").

■ We emphasize our prerogative to review questions of law *de novo* because we believe that this Court is in the best position to decide the merits of a given question of law. *See Pierce v. Underwood*, 487 U.S. 552, 559–60, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490, 501 (1988) (*quoting Miller v. Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405, 413 (1985) (The determination of judicial deference is frequently "a matter of the sound administra-

---

**3.** We recognize the United States Supreme Court's reluctance in labeling the instant standard of review "abuse of discretion" as opposed to "*de novo*." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392, 414 (1996). However, while the end determination will not be affected by the choice of legal nomenclature, for clarity of analysis, we will continue to term our review of questions of law "*de novo*." Thus, if our chosen standard of review here be an oft-qouted rose, we find that it indeed continues to smell as sweet. William Shakespeare, Romeo and Juliet, act 2, sc. 2, ("What's in a name? That which we call a rose by any other name would smell as sweet").

tion of justice, [because] one judicial actor is better positioned than another to decide the issue in question.")). As the court of final resort in Rhode Island, we recognize that to execute our given duties faithfully, we must be "[t]he final arbiter of the efficacy, interpretation, and applicability of the laws of this state * * *." *Corrado v. Providence Redevelopment Agency,* 117 R.I. 647, 655, 370 A.2d 226, 230 (1977); *see also D'Arezzo v. D'Arezzo,* 107 R.I. 422, 426, 267 A.2d 683, 685 (1970) ("Under our constitution it is the prerogative of this [C]ourt to determine the law."). Conversely, we believe that the trial justice is in the best position to make factual determinations regarding the weight of the material evidence and the credibility of the witnesses as the super seventh juror, *Morrocco v. Piccardi,* 713 A.2d 250, 253 (R.I. 1998), or the "front row spectator" in a trial, *Nisenzon v. Sadowski,* 689 A.2d 1037, 1042 (R.I.1997).

We see no compelling justification to change our well settled and effective system of jurisprudence in the instant matter concerning a motion granted pursuant to Rule 59(a). Therefore, we reaffirm that a trial justice's decision granting or denying a motion for new trial for factual reasons pursuant to Rule 59 will not be disturbed unless he or she has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong. We will review a trial justice's decision to grant a new trial because of his or her having committed an error of law during trial by employing a *de novo* analysis of the trial record in order to determine if, in fact, an error of law exists in that record.

### III

#### Admission of the Settlement Agreement

The defendants next assert that evidence of the $95,000 settlement reached between Parillo and the plaintiff was admissible at trial either under the setoff rule or for purposes of impeachment and to show bias.

Rule 408 of the Rhode Island Rules of Evidence provides in part:

"Evidence of (1) furnishing * * * or (2) accepting * * * a valuable consideration in compromising * * * a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. * * * This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

Rhode Island law recognizes that offers to compromise and evidence of settlement negotiations generally are not admissible into evidence. *See, e.g., Vingi v. Trillo,* 77 R.I. 55, 59, 73 A.2d 43, 45 (1950); *Salter v. Rhode Island Co.,* 27 R.I. 27, 30, 60 A. 588, 589 (1905). Exclusion of such evidence facilitates an atmosphere of compromise among the parties and promotes alternatives to litigation. *Salter,* 27 R.I. at 30, 60 A. at 589. Further, it is well settled that such evidentiary protection extends to settlements reached between plaintiffs and third party tortfeasors. *McInnis v. A.M.F., Inc.,* 765 F.2d 240, 247 (1st Cir. 1985) (interpreting Fed.R.Evid. 408).

We note initially that the issue of whether under Rule 408, evidence of a settlement agreement is admissible *not* to prove liability, but rather admissible for setoff or impeachment purposes, is another issue of first impression before this Court. Traditionally, in this jurisdiction, in cases where a plaintiff already has recovered against a third party and proceeds against a remaining defendant, a motion *in limine* is ordinarily filed by the plaintiff, seeking to bar admission of any evidence of the third-party settlement agreement. The trial justice then is able to later reduce any jury award rendered in favor of the plaintiff by the corresponding amount of the third-party settlement. We contrast that well-established procedure with the "jury rule," followed in a minority of jurisdictions,

which allows the trial jury to hear evidence of any third-party settlements and to use that evidence in determining the final amount of damages to be awarded. *See Morea v. Cosco, Inc.*, 422 Mass. 601, 664 N.E.2d 822, 825 (1996).

■ In *Morea*, the Massachusetts Supreme Judicial Court prospectively abandoned the "jury rule," concluding that in cases "[w]hen there is no significant risk that the jury's factfinding function will be distorted, evidence of the settlement should be excluded." *Id.* The Massachusetts court cautioned, however, that evidence of settlements may be admissible on issues other than damages, and declined to apply an automatic rule of exclusion. *Id.* We are in accord with that view, which we recognize as having already been widely accepted in Rhode Island practice and now distilled into Rule 408. Therefore, we conclude that unless evidence of a settlement is relevant to some issue, other than the quantum of damages, a trial justice is instructed to bar the admission of such evidence and subsequently to make the appropriate reduction in any jury award rendered in favor of the plaintiff.

■ We also note and caution that the admission of settlement evidence for non-damage issues continues to be guided by the calculus of Rule 403, which states that evidence, although relevant, " 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice' or such considerations as confusion of the issues, misleading the jury, and undue delay, among others." *Jameson v. Hawthorne*, 635 A.2d 1167, 1170 (R.I.1994) (quoting R.I.R.Evid. 403). Further, we reaffirm "that the admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *New Hampshire Insurance Co. v. Rouselle*, 732 A.2d 111, 113 (R.I.1999) (citing

*Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I.1997)).

In the instant matter, no *motion in limine* had been filed concerning the settlement agreement reached between Parillo and the plaintiff. After the plaintiff was questioned about the settlement agreement on cross examination, plaintiff's counsel objected, and the trial justice sustained the objection. Following a side bar conference, however, the trial justice then reversed himself, finding that:

"in order for the jury to properly consider the amount of damages, if any, to award the plaintiff, they are entitled to take into consideration all sums * * * she may have already received from another source."

■ He then permitted the plaintiff, despite her counsel's earlier objection, to be questioned concerning the settlement. At the conclusion of the trial, during his final charge to the jury, the trial justice, in response to the plaintiff's request for a curative instruction on the evidence concerning the amount of the settlement agreement, instructed the jury to disregard the evidence of the Parillo settlement.[4] At the motion for a new trial, the trial justice, upon due reflection, concluded and held that he had erred as a matter of law in admitting evidence of the settlement and that the admission of such evidence had prejudiced the plaintiff. He also found the curative instruction that he had given the jury to be ineffective in removing the prejudice to the plaintiff resulting from its admission, stating "[o]bjectively, I cannot say that the jury accepted the Court's instructions." Based on the trial record before us, we concur with the trial justice's determination that he had committed an error of law and conclude that the evidence of the settlement was not admissible for setoff purposes under Rule 408. We believe therefore that the trial justice committed no error in ordering a

4. We also note from the record that the defendants remained silent in response to this curative instruction, undermining somewhat their spirited assertions made here on appeal that such evidence was necessary for setoff or impeachment purposes.

new trial for his error of law pursuant to Rule 59(a)(1).

We next turn to the question of whether Rule 408 permits introduction of settlement evidence for purposes of impeaching a witness or demonstrating bias. Because Rule 408 is modeled on the Federal Rules of Evidence, we begin our analysis, pursuant to *Hall*, by noting that the First Circuit squarely addressed this issue in *McInnis*. We believe the analysis utilized by the Court of Appeals for the First Circuit, although not binding on this Court, is particularly instructive to the case at bar. The *McInnis* court, in deciding the admissibility of settlement evidence under Fed. R.Evid. 408, stated that "[a] critical inquiry * * * therefore, is for what purpose the [settlement] was admitted at trial." *McInnis*, 765 F.2d at 248. The court in that case concluded that the impeachment evidence at issue was "simply camouflaged causation evidence" and was therefore inadmissible under Rule 408. *Id.*

In the case at bar, the defense asserted that the evidence was properly introduced for impeachment purposes, claiming that:

> "Miss Parrillo was brought on the stand to convince the jury of a certain set of facts * * *. Her actions however, were somewhat different because her actions included the baggage, included her having, in effect, in one sense having $95,000 admission [*sic*] is that it wasn't quite that way."

▮ After reviewing the trial record, we are persuaded that although the defendants have created nimble *post hoc* rationales to justify the admission of the settlement agreement, the fact remains that the evidence was presented in an effort to demonstrate to the jury that Parillo, as the driver of the Blazer, was more than partially responsible for the fatal injuries sustained by Tavares or, alternatively, to demonstrate that the plaintiff was highly litigious and intent on suing all potential tortfeasors, regardless of fault. Neither of these discernible rationales can be considered relevant to the issues presented in the case at bar, and both rationales certainly contained the highly charged potential to prejudice the jury against the plaintiff.

▮ Specifically, we are of the opinion that evidence concerning the apportionment of fault among tortfeasors by way of settlement agreements introduced at trial is specifically proscribed by Rule 408 and supported by Rhode Island case-law. *Vingi*, 77 R.I. at 59, 73 A.2d at 45; *Salter*, 27 R.I. at 30, 60 A. at 589. We find further support for this conclusion by analogizing to our own well-established collateral source doctrine. "[This] doctrine mandates that evidence of payments made to an injured party from sources independent of a tort-feasor are inadmissible and shall not diminish the tort-feasor's liability to the plaintiff." *Gelsomino v. Mendonca*, 723 A.2d 300, 301 (R.I.1999) (citing *Moniz v. Providence Chain Co.*, 618 A.2d 1270, 1272 (R.I.1993)). "The rationale of this rule is that the injured person is entitled to be made whole, since it is no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim * * *[.]" *Id.* (quoting *Colvin v. Goldenberg*, 108 R.I. 198, 202, 273 A.2d 663, 666 (1971)).

▮ We are similarly convinced that evidence of the settlement agreement could not have been properly admitted for impeachment purposes or to show bias. We note from the trial record that Parillo had testified prior to the plaintiff being called to testify, but remarkably, neither of the defense counsel during Parillo's testimony sought to cross-examine her in any way about the settlement agreement. However, in marked contrast, it appears that defense counsel laid in wait for the plaintiff because the second question asked of the plaintiff on cross-examination was, "[n]ow, you've already received a $95,000 settlement from the Parillos in this

case[?]"[5] We further note that defense counsel raised the question of his attempting to impeach Parillo's credibility only during the hearing on the plaintiff's motion for a new trial. At the sidebar conference held following plaintiffs' counsel's objection, defense counsel had limited his remarks only to the setoff rationale in seeking to justify the admission of the $95,000 settlement evidence.

We also believe, however, that the introduction of the settlement agreement in this case, while not proper for impeachment purposes, could have also reasonably tended to show that the plaintiff had a litigious disposition and "is precisely the type of character evidence Rule 404(b) was designed to exclude." *DeChristofaro v. Machala*, 685 A.2d 258, 265 (R.I.1996).

Thus, we readily conclude that such questioning was obviously designed to create in the jury's mindset the inference that Parillo was more than partially responsible for Tavares's injuries, in clear violation of Rule 408 or, if failing that design, in violation of Rule 404(b), to demonstrate that the plaintiff was a very litigious person. Consequently, the trial justice did not err by finding that the previously introduced settlement evidence was impermissible for either setoff or impeachment purposes and in granting the motion for a new trial.

## IV

### Harmless Error

The defendants finally assert that, assuming *arguendo* the settlement evidence was inadmissible, the error was cured by the curative instruction given shortly following the admission of the settlement evidence during trial and later as part of the trial justice's final jury charge. As discussed earlier, however, the trial justice found that his curative instructions were ineffective to remedy the taint of the previously admitted settlement evidence.

"In reviewing a trial justice's charge to a jury, this Court examines the charge 'as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them.'" *Neri v. Nationwide Mutual Fire Insurance Co.*, 719 A.2d 1150, 1153 (R.I. 1998) (quoting *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 829 (R.I. 1986)). "An erroneous charge warrants reversal only if it can be shown that the jury '"could have been misled" to the resultant prejudice of the complaining party.'" *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986) (quoting *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968)). Further, when faced with the existence of probable prejudice to one party, a curative instruction is considered appropriate "if the trial justice believes that the prejudice is curable and issues a timely and effective instruction to the jury." *State v. LaRoche*, 683 A.2d 989, 999 (R.I.1996).

Based on the trial record before us, we cannot say that the trial justice erred in finding that his somewhat untimely curative instruction given during the trial, as well as the later curative instruction given during his final charge to the jury, was unable to remove the prejudice resulting to the plaintiff. We do note from the record that much further along in the plaintiff's cross-examination, defense counsel had once again attempted to introduce evidence of claims made against other former codefendants, and the trial justice, after another side bar conference, did caution the jury that:

"You are only to concern yourselves with whether or not, based upon the evidence which has been presented to you, and when the Court instructs you on the law, whether or not the plaintiffs * * * have established by the requisite quantum of evidence that the two defendants * * * are liable in damages."

5. The first question on cross-examination of the plaintiff by defense counsel being "I know this is very difficult for you, but you understand I have to ask you some questions?" The very next question was much less condescending and contained the fatal fishhooks.

We are of the belief that the trial justice's somewhat general curative instruction was neither timely nor effective in eradicating the specific taint of the $95,000 settlement evidence that had become settled in the minds of the jurors. At the end of the trial, the trial justice instructed the jury that:

> "During the course of this trial you heard evidence that the decedent's mother received from the Parillos a sum of money. I instruct you that the law requires that you disregard this evidence. Such evidence is not relevant to the issues that are before you in this matter. You must attempt to determine such damages as will reasonably compensate the plaintiff for the damages and injuries she has sustained based upon the evidence presented to you."

We note that the trial jury was given this instruction four days after the testimony in question concerning the settlement and that the instruction, the trial justice observed, "was * * * roughly, in the middle of the Court's instruction. It was a one paragraph statement which came in the context of proximate cause and damages." We believe, as did the trial justice, that this instruction was far too little and far too late to remedy the prejudice caused by the admission of the $95,000 settlement agreement. Because we conclude that the evidence of the settlement certainly did prejudice the jurors to the detriment of the plaintiff on the issue of the defendants' liability, we are of the opinion that the trial justice did not err in granting the motion for a new trial pursuant to Rule 59(a)(1).

For the foregoing reasons, the defendants' appeal is denied and the judgment appealed from is affirmed. The papers in this case are to be remanded to the Superior Court for a new trial.