DECISION
Before the Court is defendant's motion for new trial, pursuant to Rule 59 of the Rhode Island Superior Court Rules of Civil Procedure. The defendant's motion follows a jury verdict entered for the plaintiff.
Facts/Travel
On May 18, 1992, Marketing Design Source, Inc. (MDS or plaintiff) and Pranda North America, Inc. (Pranda or defendant), by their respective agents Margaret Cook (Cook) and Karen Bannister Pajaka (Bannister), executed an agency agreement dated April 30, 1992 (the agreement).
Pursuant to the agreement, MDS acted as "advertising agency and marketing counsel" for Pranda on two projects herein disputed, respectively "Flyer" and "Premiere."
The Flyer project essentially involved the production of a sales brochure (brochure) to be used by the defendant's independent sales representatives during or after a certain trade show. Publication of the brochure occurred after several communications between the parties which included issues of quality and time constraints. During the course of the project, Pranda paid MDS the amount of $84,026.20. MDS delivered three hundred brochures to Pranda on January 23, 1993.[1] Pranda retained the brochures over MDS's objection, which was based upon Pranda's refusal to pay in full upon delivery, and took the brochures to a trade show in New York on January 28, 1993.
The Premiere project was not related to the Flyer project. It involved an advertising program related to Pranda's launching of a new product line to the market. Subsequent to MDS's performance on various elements of the program and Pranda's partial payment, Pranda canceled the project.
The plaintiff's complaint alleged that, pursuant to the agreement, the defendant owed an outstanding balance to the plaintiff for its performance on the two projects. The defendant's answer included a counterclaim that plaintiff's work on the Flyer project was defective, untimely, and in breach of the agreement. Additionally, the defendant alleged that the brochure was not merchantable or fit for its particular purpose as the plaintiff had warranted. The parties agreed that the matter would be tried pursuant to relevant UCC provisions.
At the close of the plaintiff's evidence during the trial, the defendant moved for judgment as a matter of law. Subsequently, the plaintiff moved for judgment as a matter of law on the defendant's counterclaim. Thereafter, the defendant renewed its motion. After considering the parties' respective arguments, this Court denied the defendant's motions and granted the plaintiff's motion over the defendant's exception.
After hearing the testimony of several witnesses, the jury answered special interrogatories in the plaintiff's favor. Regarding the Flyer project, the jury found that plaintiff proved that there was a contract between the parties, that there were modifications of the contract, and that the plaintiff performed all of its obligations under the terms of the contract as modified. After finding the total amount to which the plaintiff was entitled ($129,039) and the amount already paid ($84,026.20), the jury calculated the outstanding balance owed as $45,012.80. Regarding the Premiere project, the jury found that the plaintiff proved that there was a contract between the parties and that according to the terms of the contract, plaintiff was entitled to monetary damages in the amount of $15,930 (total amount of $37,930 minus payment of $22,000).
After trial, the defendant timely filed a motion for a new trial based on the generic grounds that the verdict is against the law, evidence and against the weight of the evidence, and that the verdict is defective or fails to do substantial justice. The plaintiff objects to the defendant's motion. After oral argument on April 13, 1999, the motion was continued pending submission of memoranda pursuant to this Court's order, specifically allowing the defendant thirty days to submit a memorandum once the transcript had been obtained, and thereafter allowing the plaintiff thirty days in which to reply. After the defendant submitted its memorandum on December 10, 1999, the plaintiff replied on or about October 13, 2000.[2]
Motion for a New Trial
When considering a motion for a new trial based upon an allegation that the verdict is contrary to the evidence and the weight thereof, "a trial justice sits as the super juror and is required to independently weigh, evaluate and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand." Morrocco v. Piccardi,713 A.2d 250, 253 (R.I. 1998) (citing Barbato v. Epstein, 97 R.I. 191, 193-94, 196 A.2d 836, 837 (1964)). "If, however, the trial justice finds that the jury's verdict is against the fair preponderance of the evidence and fails to do substantial justice, he or she must grant the motion for a new trial." Reccko v. Criss Cadillac Co., Inc., 610 A.2d 542, 545 (R.I. 1992) (citing Sarkisian v. NewPaper, Inc., 512 A.2d 831, 836 (R.I. 1986)). "Although the trial justice need not perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed." Id. (citing Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)). Conclusions of the trial justice on a motion for a new trial should not be substituted for those of the jury, and the jury verdict should not be disturbed merely because the trial justice would have made a contrary finding on the same evidence. Turgeon v. Davis, 120 R.I. 586, 590, 388 A.2d 1172, 1174 (1978).
Rule 59 of the Superior Court Rules of Civil Procedure, as amended September 5, 1995, permits alleged errors of law committed by the trial justice in a case tried before a jury to be raised in a motion for new trial. See Amica Mutual Insurance Co. v. Tashjian, 703 A.2d 93, 97 (R.I. 1997). In Votolato v. Merandi, our Supreme Court stated that the 1995 amendment to Rule 59 "significantly expanded the traditional grounds for the grant of a new trial and served to conform our rule to its federal counterpart." 747 A.2d 455, 460 (R.I. 2000). Our Court then recognized that "[t]his [federal] rule posits that `[a]ny error of law, if prejudicial, is a good ground for a new trial.'" Id. (citing 11 Wright 
Miller, Federal Practice and Procedure: Civil 2d § 2805 at 55 (1995)). An error of law during trial is an abuse of the trial justice's discretion. Id. When reviewing whether a trial justice has abused his or her discretion concerning the grant or denial of a new trial based on an error law during trial, the Court applies, as to other questions of law, the de novo standard of appellate review. Id. at 460-61.
Where the motion for a new trial is predicated upon the grounds that the verdict is contrary to the law, the only question presented is whether or not the jury accepted and followed the law as given to it by the trial justice in his or her charge. Sneddon v. Costa, 117 R.I. 624, 627, 369 A.2d 643, 645 (1977). On such allegation, the verdict should be set aside if it "is contrary to the law as given by the trial justice to the jury." Blume v. Shepard Co., 108 R.I. 683, 690, 278 A.2d 848, 852 (1971).
Motion for Judgment as a Matter of Law
In deciding a motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, the trial justice "views the evidence in the light most favorable to the nonmoving party and, without weighing the evidence or assessing the credibility of the witnesses, draws all reasonable and legitimate inferences therefrom in the nonmoving party's favor." McLaughlin v. Moura, 754 A.2d 95, 98 (R.I. 2000) (citation omitted) Reasonable inferences are those which are based on more than mere "conjecture, speculation, or surmise." See Long v. Atlantic PBS, Inc., 681 A.2d 249, 252 (R.I. 1996). "[I]n factual circumstances in which no reasonable jury could find for the nonmoving party, the motion should be granted." McLaughlin, 754 A.2d at 98 (citation omitted). If "there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." DeChristofaro v. Machala, 685 A.2d 258, 262 (R.I. 1996) (citations omitted).
In its motion, the defendant first contends that this Court erred in granting the plaintiff's motion for judgment as a matter of law on the defendant's counterclaim, thereby precluding Pranda from arguing its entitlement to damages in the amount of $84,026.20, the amount that Pranda paid to MDS on the Flyer project. The defendant's counterclaim asserts that the plaintiff breached the agreement, including the warranties of merchantability, fitness for a particular purpose and other industry standards.
In this argument, the defendant essentially contends that this Court overlooked evidence that establishes a reasonable inference that the sales representatives could not use the brochure, or disapproved of the brochures because of their poor quality.
The defendant's evidence, by testimony of Paul Oristaglio, then-Vice President of Finance and Operations for Pranda, established that Pranda had expressed dissatisfaction to MDS regarding the quality of the proofs, and upon delivery, the brochures. Oristaglio further testified that the independent sales representatives would determine the usability of the brochures. His testimony indicated that the sales representatives reviewed the brochures at the trade show. Origtaglio also testified that the sales representatives never used the brochures and that after the trade show, Pranda procured another brochure.[3] However, the defendant offered no evidence from the sales representatives, including that the brochures were unusable or could not be used for the intended sales program. Viewing the evidence most favorably to the defendant, there was evidence from which the jury could reasonably find that the brochures were not used by the sales representatives. However, a close scrutiny of the record fails to disclosed evidence as to whether the brochures were unusable, and if so, why. Accordingly, there is insufficient evidence for a jury to return a verdict for the defendant on its counterclaim.
Next, Pranda contends that MDS admitted that its work was substandard, not merchantable and not fit for the purpose intended. The defendant also asserts that there was no evidence that it waived the warranties on the brochures. Based on this argument, the defendant claims it was entitled to judgment as a matter of law on count one of plaintiff's complaint and count two of its counterclaim, or is entitled to a new trial.
The undisputed evidence shows that Cook admitted that the brochure was substandard.[4] The evidence does not, as the defendant contends, contain an admission by MDS that the brochure was not merchantable or fit for its intended purpose nor is there evidence of a warranty by MDS other than that the brochures would be consistent with Pranda's approvals. Cook testified that Pranda, after review of proofs and with awareness of the quality compromise and time constraints, authorized MDS to print the brochures. She further testified that upon delivery of three hundred brochures to Pranda, Pranda refused payment and retained the brochures despite dissatisfaction with the quality of the brochures. On the facts, reasonable minds could differ regarding whether Pranda waived any warranty, whether delivery or acceptance was conditional, and whether the nonuse of the brochures proved that they were not merchantable or fit for the intended purpose. Accordingly, denial of the defendant's motion for judgment was a matter of law on count one of plaintiff's complaint was justified by the evidence.
The defendant's third contention in support of a new trial relates to count two of the plaintiff's complaint which seeks damages as a result of the defendant's canceling the Premiere project. Pranda argues that, pursuant to the agreement between the parties, the application of the kill fee clause is contingent on a plan of specific elements which was dated April 30, 1992 (the plan). The defendant contends that MDS's claim fails without documentary evidence of the April plan. Without elaborating, Pranda relies on its pleading of the statute of frauds as notice that the plan would be an essential component of the plaintiff's claim. On this basis, defendant argues count two of plaintiff's complaint should have been dismissed as a matter of law.
The agreement contains language that "a 50% kill fee will be applied for all specific elements started and stopped by Pranda on the plan outlined and dated 4.30.92."[5] The plaintiff also introduced a "Client Call Report" dated May 18, 1992.[6] The Call Report reflects that a project outline and cost proposal was submitted to Pranda on April 30, 1992, and it summarizes Pranda's approvals with revisions.[7] The plaintiff's testimony was that the Call Report verified the budget and the parties' responsibilities. Cook further testified regarding the extent of MDS's work on each element and that Pranda stopped the project.[8]
The evidence before this Court established that the agreement included a kill fee clause, the extent of MDS's performance on the Premiere project, cancellation of the project by Pranda and outstanding monies owed to MDS by Pranda. Because the defendant has asserted the statute of frauds as an affirmative defense, said defense is defendant's burden to prove. See, e.g., DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 766 (R.I. 2000). However, the defendant has failed to establish that the statute of frauds barred enforcement of the plaintiff's claim. Having considered the testimonial and documentary evidence and reasonable inferences therefrom in the plaintiff's favor, reasonable minds could differ as to whether an action for breach of contract had been proved.
Therefore, the defendant's motion for judgment as a matter of law on count two of plaintiff's complaint was properly denied.
Finally, Pranda contends that there was inadequate evidence to support the damage award which was clearly excessive.[9] The defendant also argues that the inclusion of eighteen percent interest on the damage award was unsupported by any evidence whatsoever. First, the defendant contends that plaintiff's action for the price of the contract is subject to the provisions of § 2-709 of the Commercial Code. Pursuant to § 2-709, Pranda argues that MDS was obliged to hold all goods which were identified to the contract and further that any judgment without evidence of disposition of the goods is clearly excessive.
The defendant had submitted § 2-709 in its proposed jury instructions.[10] After hearing arguments from the parties, this Court sustained the plaintiff's objection to the instruction. Pranda did not object to the ruling. Accordingly, the instructions became the law of the case and are binding on both the jury and the trial judge when considering a motion for a new trial. See DiFranco v. Klein, 657 A.2d 145
(R.I. 1995).
Regarding the amount of damages, the evidence established that the original budget for the Flyer project amounted to $92,825.[11] The plaintiff's testimony indicated that the budgeted amount was not static and that any increases were authorized.[12] Further, Cook testified that the final cost of the Flyer program amounted to $129.039.[13] The defendant's evidence also indicated that the budget had incrementally increased from $90,000 to $129,000.[14] Having found a contract between the parties, subsequent modifications of the contract and full performance by the plaintiff, the jury then awarded the amount of $45,012.80 ($129,039 minus Pranda's payment of $84,026.20). "[A] damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." Shayer v. Bohan, 708 A.2d 158, 165 (R.I. 1998) (citations omitted). Having reviewed the evidence on damages, this Court does not find that the amount awarded by the jury is so excessive as to fail to work substantial justice between the parties.
Regarding interest on the damages award, the agreement provides that "1.5% interest will be added to the outstanding invoice if the balance is not paid [sic] the time specifies above or within the thirty day time period. The interest will be provided on a monthly basis until the invoice is paid in full."[15]
The defendant now argues that the agreement does not control the Flyer program. However, during trial, the defendant did not controvert the plaintiff's testimony that the agreement manifested the business relationship between the parties. Further, the defendant's documentary evidence, a September 1, 1992 invoice from MDS to Pranda for the Flyer program, expressly provides that "any outstanding balance over 30 days will be applied 1.5% interest or 18% annually."[16] Based on the evidence, the interest award is consistent with the agreement between the parties. Accordingly, the defendant's argument that the inclusions of eighteen percent on the damage award was unsupported by any evidence whatsoever is unavailing.
After hearing and considering the evidence presented at trial, this Court finds competent and credible evidence to sustain the jury's verdict. The Court does not find that the damage award shocked the conscience of the court, was affected by passion or prejudice or emanated from a clearly erroneous basis. Accordingly, the defendant's motion for a new trial is denied.
Counsel shall schedule a hearing before the Court for purposes of entering a judgment.
[1] The three hundred brochures constituted part of an order for three thousand brochures.
[2] In its memorandum, the plaintiff cites the transcript of the Motion for a New Trial, however, the transcript was not provided pursuant to this Court's Order. Consequently, the Court is unable to reference same while proceeding to decision on the subject motion.
[3] 3/24/99 Tr. at 118, 127-34.
[4] 3/23/99 Tr. at 33.
[5] Id., ~ J at 3.
[6] P. Ex. 2.
[7] Id.
[8] 3/22/99 Tr. at 29-41; 3/23/99 Tr. at 77-79.
[9] The defendant's argument focuses solely on the Flyer project. Regarding the Premiere project, the plaintiff testified that the original Premiere budget amounting to approximately $65,000 was increased to $75,000. 3/22/99 Tr. at 31. The further testimony of plaintiff was that the 50% kill fee in the contract applied to any projects that were started and stopped by Pranda. 3/22/99 Tr. at 41; P. Ex. 1. The plaintiff's testimony indicated that Pranda's agents approved the budget increases. 3/22/99 Tr. at 32. MDS introduced an invoice that it had submitted to Pranda indicating the total amount of the contract ($75,860), the "kill fee" ($37,930), payment received ($22,000) and the amount of the outstanding balance ($15,930). P. Ex. 3.
[10] 3/24/99 Tr. at 184, 188-89.
[11] 3/22/99 Tr. at 47; P. Ex. 4 at 4.
[12] 3/22/99 Tr. at 47; Id. at 94; Ex. 11.
[13] 3/22/99 Tr. at 94; P. Ex. 11.
[14] 3/24/99 Tr. at 121.
[15] P. Ex. 1, K at 3.
[16] D. Ex. A.