DECISION RE: OTHER INCIDENTS/NHTSA COMPLAINTS/SETTLEMENT AGREEMENT/RECALL EVIDENCE
Before this Court are three related motions in limine, filed by the defendant, Ford Motor Company ("Ford"): (1) Ford's "Motion In Limine to Exclude Evidence of Other Accidents, Incidents, Claims and Lawsuits and Ford's Investigation of Those Accidents, Incidents, Claims and Lawsuits and Minlon Ignition Switches;" (2) Ford's "Motion in Limine to Exclude Evidence of NHTSA Complaints and Settlement;" and (3) Ford's "Motion in Limine to Exclude Evidence of Irrelevant NHTSA Transport of Canada Investigations and Ford Recalls."
In the underlying products liability action, the plaintiff, Carol Dodson ("Dodson"), in her capacity as executrix of the estates of the late Cecil and Doris Dodson ("the Dodsons"), seeks compensatory and punitive damages from Ford, alleging, inter alia, that the Dodsons' 1982 Ford Crown Victoria was defectively designed and manufactured. (Dodson's Fourth Am. Compl. 3-4.) Dodson alleges that a defect in the FOX-type ignition switch originally installed in the Dodsons' 1982 Ford Crown Victoria caused the vehicle to catch fire, which, in turn, caused the Dodsons' house to catch fire. Dodson alleges that, as a result of the fire, Cecil Dodson sustained serious injury and Doris Dodson died. (Id. at 4.)
By its motions, Ford seeks orders excluding certain evidence and precluding reference to such evidence at trial. Dodson objects to Ford's motions, and has filed three memoranda — two brief memoranda and a larger, consolidated memorandum — in support of her objections. This Court has heard oral arguments on the motions. Herein, this Court will decide the motions collectively.
 ANALYSIS I. Ford's Motion In Limine to Exclude Evidence of "Other Incidents," Minlon Ignition Switches and Ford's Investigation into Minlon Ignition Switch Fires
By its first motion, Ford seeks an order excluding from evidence and precluding reference at trial to two somewhat related groups of evidence. The first group of evidence Ford seeks to exclude is "other accidents, incidents, injuries, claims and lawsuits relating to allegations of ignition switch, steering-column, or under-dash fires and Ford's investigation of those accidents, incidents, injuries, claims and lawsuits," collectively referred to as "other incidents." (Ford's Mot. In Limine to Exclude Evidence of Other Accidents, Incidents, Claims and Lawsuits and Ford's Investigation of Those Accidents, Incidents, Claims and Lawsuits and Minlon Ignition Switches 1-2 [hereinafter Ford's Mot. re: Other Incidents].) The second group of evidence Ford seeks to exclude is "Minlon [i]gnition [s]witches and Ford's investigation into Minlon ignition switch fires."
With regard to "other incidents," Ford first argues that they are irrelevant. (Id. at 1.) Alternatively, Ford argues that the reports of other incidents are hearsay and that, to the extent that "other incidents" are deemed relevant, their probative value "is outweighed by the dangers of unfair prejudice, confusion of the issues and undue delay." (Id. at 1-2.) With regard to Minlon-based ignition switches and Ford's investigation into Minlon-based ignition switch fires, Ford first argues that Minlon-based ignition switches are irrelevant because, Ford asserts, Dodson cannot establish that Minlon and phenolic ignition switches are "substantially similar." In the alternative, Ford argues that the probative value of Minlon-based ignition switches and Ford's investigation into Minlon-based ignition switch fires is "outweighed by the unfair prejudice and jury confusion that would result to Ford if this evidence is admitted into evidence." (Id. at 2.) In addition, Ford appears to argue that "evidence concerning Minlon ignition switches" should be excluded under Daubert v. Merrell Dow Pharmaceuticals,Inc., 509 U.S. 579 (1993).
In its motion, Ford addresses "other incidents" first; however, the admissibility of "other incidents" depends, in part, on the admissibility of Minlon-based ignition switches and Ford's investigation into Minlon-based ignition switch fires because the "other incidents involved vehicles manufactured by Ford with a Minlon ignition switch." (Ford's Mot. re: Other Incidents 8.) As a result, this Court begins its analysis of Ford's motion by addressing Ford's arguments for the exclusion of Minlon-based ignition switches and Ford's investigation into Minlon-based ignition switch fires.
Ford's principal argument for the exclusion of Minlon-based ignition switches is that Minlon-based ignition switches are irrelevant in the underlying products liability action because the ignition switch originally installed in the Dodson vehicle was made of phenolic, not Minlon. Ford argues that Dodson cannot establish the relevance of the Minlon-based ignition switches because she cannot establish that the Minlon-based and phenolic-based ignition switches are "substantially similar."
In support of its argument, Ford relies on affidavits from its expert, John Loud ("Loud"), which, Ford argues, "make clear [that] phenolic has a different burn rating than Minlon in that it is less flammable" and that "there is no scientific basis for assuming that the phenolic ignition switch originally assembled in the 1982 Crown Victoria can cause a fire as did some of the" approximately 7.8 million Minlon-based FOX-type ignition switches, manufactured between 1988 and 1992, that were recalled by Ford in 1996. (Ford's Mot. re: Other Incidents 13.) In addition, Ford asserts that no testing has ever been performed to show that the problem with the Minlon-based ignition switch can occur in a phenolic-based ignition switch and that, unlike the Minlon-based ignition switches, "the history of the phenolic switches used in the field is excellent." (Id.)
This Court, in a separate decision concerning the admissibility of expert testimony, has already addressed Ford's supporting arguments, which are the same arguments Ford posed for the exclusion of Dodson's expert, Dr. Myron Kayton ("Kayton"). In that decision, this Court ruled that Kayton is qualified to offer his expert opinion that the phenolic-based FOX-type ignition switch originally installed in the Dodson vehicle was defective, and that, in the formation of his opinion, Kayton was permitted to rely on the report published by Failure Analysis Associates ("FAA") following its investigation into the cause of failures in Minlon-based ignition switches.
Kayton concluded that the phenolic-based FOX-type ignition switch originally installed in the Dodson vehicle was defective based on his expert opinion that the mechanism identified by FAA in its report as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches. (Kayton Dep. 106:13-107:1, July 29, 2003.) Dodson, therefore, does not argue that Minlon-based FOX-type ignition switches are "substantially similar" to the phenolic-base FOX-type ignition switch originally installed in the Dodson vehicle. Rather, Dodson argues that "Ford's Minlon v. phenolic distinction is a red herring" and that "the FOX ignition switch installed in over 25 million Ford vehicles from 1979 to 1992 was unchanged in the critical design components which [sic] increased its risk of overheating and burning." (Dodson's Consolidated Mem. In Supp. of Objections to Ford's Mots. In Limine to Exclude Evidence Relating to: "Other Incidents;" NHTSA Compls. and Settlement; Gov't Investigations; and Ford Ignition Switch Recalls 2 [hereinafter Dodson's Consolidated Mem.].)
If, in fact, the mechanism identified by the FAA in its report as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches, Minlon-based FOX-type ignition switches are extraordinarily relevant, as is Ford's investigation into Minlon-based ignition switch fires, which tends to show that Ford had knowledge of the defect. By the same token, this evidence is extraordinarily prejudicial to Ford, but not unfairly so. According to the Advisory Committee's Note to Rule 104(b) of the Rhode Island Rules of Evidence, "where the relevancy . . . of a particular item of evidence depends upon the existence of a preliminary fact, the determination of the preliminary fact is for the jury, subject to the trial judge's determination that evidence to support the jury's finding of the fact has been admitted." This Court is satisfied that Kayton's testimony provides the jury with evidence sufficient to support a jury finding that the mechanism identified as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches. This Court leaves it to the jury to assign Kayton's testimony appropriate weight and credibility and to choose the winner in any credibility battle between Dodson's and Ford's experts. See Parrella v. Bowling, 796 A.2d 1091, 1094 (R.I. 2002). Ford's request for the exclusion of Minlon ignition switches and Ford's investigation into Minlon ignition switch fires is thus denied.
Turning to Ford's argument for the exclusion of "other incidents," evidence of incidents similar to the plaintiff's, generally, "is viewed with disfavor because the other incidents `may have been the consequence of idiosyncratic circumstances.'"Santos v. Chrysler Corp., 715 N.E.2d 47, 52 (Mass. 1999) (quoting Read v. Mt. Tom Ski Area, Inc., 639 N.E.2d 391, 393
(Mass.App.Ct. 1994)). Such evidence of "other incidents" is admissible only "if the judge first determines that the jury could find a substantial similarity in circumstances." Id.
(citations omitted). That is not to say, however, that the circumstances must be identical. See Lewy v. Remington ArmsCo., 836 F.2d 1104 (8th Cir. 1988) (affirming admission of similar incidents involving different Model 700 rifles and reversing admission of similar incidents involving Model 600 rifles). Circumstantial differences between the other incidents and the plaintiff's accident go to the jury's determination of the weight of the evidence. Santos, 715 N.E.2d at 53.
The substantial similarity assessment "is a function of the theory of the case." Moulton v. Rival Co., 116 F.3d 22, 27 (1st Cir. 1997). "In determining the existence of similar circumstances, the trial judge examines the factors that relate to the particular theory underlying the case." Libby v. GriffithDesign Equip. Co., 1990 U.S. Dist. LEXIS 19475, at *6 (D. Me. June 19, 1990) (citing Ponder v. Warren Tool Corp.,834 F.2d 1553, 1560 (10th Cir. 1987)). The purpose for which the incidents are introduced may influence the court as well. See Shields v.Sturm, Ruger Co., 864 F.2d 379, 381 (5th Cir. 1989) (citingJackson v. Firestone Tire Rubber Co., 788 F.2d 1070, 1083
(5th Cir. 1986)) ("When evidence of other accidents is introduced solely to show the defendant's awareness of a dangerous condition . . . the rule requiring substantial similarity of those accidents to the accident at issue is relaxed").
Without actually enumerating the "other incidents" it seeks to exclude, Ford argues that Dodson "cannot make a showing that the circumstances of any of the other incidents are substantially similar to those of the present claim," apparently because, Ford argues, the "other incidents" involved Minlon-based FOX-type ignition switches instead of phenolic-based FOX-type ignition switches, like the one originally installed in the Dodson vehicle. (Ford's Mot. re: Other Incidents 7.) Ford argues, therefore, that "[t]he defects, if any, alleged in other incidents . . . would be irrelevant to the issues of the existence of Ford's knowledge of any design defects in 1982 Crown Victorias or phenolic switches." (Id.)
Ford, thereby, conflates its argument for the exclusion of "other incidents" with its argument for the exclusion of Minlon-based FOX-type ignition switches. This Court has already ruled that there is evidence before the Court sufficient to support a jury finding that the mechanism identified as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches. This Court will not exclude "other incidents" simply because they involve Minlon-based FOX-type ignition switches. "Other incidents" involving Minlon-based FOX-type ignition switches will be excluded only if Dodson cannot establish that the circumstances of the "other incidents" are substantially similar to circumstances in the Dodson incident or, assuming substantial similarity is shown, if the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues outweigh the factors favoring admissibility. McKinnon v. SkilCorp., 638 F.2d 270, 277 (1st Cir. 1981).
In its first motion, Ford refers vaguely to two National Highway Traffic and Safety Administration ("NHTSA") investigations of steering column and under-dash fires in Ford vehicles with Minlon-based FOX-type ignition switches and Ford's subsequent voluntary recall of approximately 7.8 million Minlon-based FOX-type ignition switches from vehicles manufactured between 1988 and 1992. In addition, Ford refers to "voluminous documents" collected by Ford and NHTSA "concerning many reports of steering-column and under-dash fires during their respective investigations," some of which "were prepared by the actual drivers, by insurance companies, by investigators, attorneys, dealers, and some were summaries prepared by people combining information reported by others." This Court can only assume that the "other incidents" Ford seeks to exclude are those referenced in the "voluminous documents" collected by Ford and NHTSA, but Ford has not shown that the circumstances of these unspecified "other incidents" are materially different from the circumstances of the Dodson incident. Indeed, Ford has eschewed comparison entirely, preferring, instead, to simply seek exclusion of the reports of "other incidents" as inadmissible hearsay.
Ford's hearsay argument is unavailing, however, because evidence of "other incidents" may be used for non-hearsay purposes. In strict liability, negligence, and breach of warranty actions, trial courts routinely admit evidence of "other incidents" to show notice, the magnitude of the danger involved, the opposing party's ability to correct a known defect, the product's lack of safety for its intended uses, the strength of a product, standard of care, and causation. See Louis R. Frumer 
Melvin I. Friedman, Products Liability § 18.02 (2002). Ford argues that "other incidents," here, cannot be used for non-hearsay purposes, namely to show Ford's notice of the potential defect in Minlon-based FOX-type ignition switches, because "[a]ny notice to Ford relating to Minlon ignition switch fires or evidence of Ford's 1996 recall is irrelevant in this case, as [Dodson alleges] a completely different defect, i.e., a phenolic-base ignition switch defect." (Ford's Mot. re: Other Incidents 8.) This Court has already discredited Ford's relevancy argument, however. Accordingly, this Court cannot determine that "other incidents" may not be used for the purpose of showing Ford's notice of the potential defect in Minlon-based FOX-type ignition switches or for any other non-hearsay purpose for that matter. Furthermore, without knowing to which documents Ford's hearsay argument refers or for what purpose Dodson intends to use those documents, this Court cannot address Ford's hearsay and Rule 403 arguments. As a result, Ford's request for complete exclusion of "other incidents" is denied.
 II. Ford's Motion In Limine to Exclude Evidence of NHTSA Complaints and Settlement Agreement
By its second motion, Ford seeks an order excluding NHTSA complaints from evidence in the underlying products liability action and precluding reference to them at trial. Ford asserts that the NHTSA complaints constitute evidence of "other incidents" and argues, accordingly, that these "other incidents" and the Dodson incident cannot be shown to have occurred under substantially similar circumstances. Ford, however, bases its argument that these "other incidents" and the Dodson incident cannot be shown to have occurred under substantially similar circumstances on its failed assertion that the Minlon-based FOX-type ignition switches referenced in these "other incidents" are irrelevant. This Court has already determined that evidence of "other incidents" will not be excluded simply because they involve Minlon-based FOX-type ignition switches.
In any event, this Court cannot determine whether these "other incidents" and the Dodson incident occurred under substantially similar circumstances because this Court has not been "apprised of the specific facts of the previous incidents." See Barkerv. Deere Co., 60 F.3d 158, 163 (3rd Cir. 1995). No NHTSA complaints are before the Court. Since there are no complaints and no information about the circumstances of those complaints, there are certainly "too few established facts" from which this Court can draw a comparison to the Dodson incident. Nachsteim v.Beech Aircraft Corp., 847 F.2d 1261, 1269 (7th Cir. 1988). The record in this case is "totally devoid" of evidence of the circumstances under which the incidents in the NHTSA complaints occurred. McKinnon, 638 F.2d at 277. Therefore, this Court is unable to commence its task of evaluating the facts and circumstances of the incidents related in the NHTSA complaints.
The "other incidents" referenced in the NHTSA complaints will not be admitted unless and until Dodson demonstrates that the circumstances of these "other incidents" and the Dodson incident are substantially similar. With that information, this Court will evaluate whether Dodson presents evidence of substantially similar incidents. If Dodson meets the burden of showing substantial similarity, then this Court will address Ford's additional arguments for excluding the NHTSA complaints.
Accordingly, this Court reserves its decision on Ford's motion to exclude evidence of NHTSA complaints until such time as the aforementioned requisite information is provided. This Court will treat any request for the admission of additional evidence of other ignition switch fires in the same manner.
By its second motion, Ford also seeks "to preclude any evidence of the Settlement Agreement between Ford and [NHTSA]," which Ford attaches to its motion. Ford moves for exclusion of the Ford-NHTSA settlement agreement on several grounds, including Rule 408 of the Rhode Island Rules of Evidence, unfair prejudice, inadmissible hearsay, and lack of relevance. (Ford's Mot. In Limine To Exclude Evidence of NHTSA Compls. Settlement 1-2 [hereinafter Ford's Mot. re: Compls. Settlement].) Dodson submits, in her objection, that the settlement agreement is one of several documents both containing information on the cause and effect of Ford ignition switch fires and reflecting Ford's knowledge of a defect prior to the Dodson vehicle fire. (Dodson's Objection and Mem. To Ford's Mot. to Exclude Evidence of Irrelevant NHTSA Compls. Settlements NHTSA Transp. Canada Investigations Ford Recalls 1, 2 [hereinafter Dodson's Objection re: Compls. Settlement].) In her consolidated memorandum, Dodson's "Argument" section fails to respond to Ford's arguments for exclusion of the NHTSA settlement agreement, but Dodson does make some assertions related to the settlement agreement in both the "Introduction" and "Facts" sections. There, Dodson states that Ford "withheld material information from NHTSA about Ford's knowledge of the role played by the Fox ignition switch in causing [steering column] fires." (Dodson's Consolidated Mem. 2.) Dodson further asserts that the withholding of material from NHTSA is relevant to its claims that Ford knew of an ignition switch problem and failed to remedy it. In addition, Dodson mentions Ford's settlement of NHTSA's charge of "obstructing its investigations by withholding material information" by "payment of a record fine." (Id. at 8.)
Dodson also speaks to the settlement agreement in its response memorandum to Ford's objections to Exhibits offered during the Laskowski trial-testimony deposition, in which the settlement agreement was presented as Exhibit 30. (Dodson's Resps. To Ford's Objections to Exs. Offered into Evidence During the Videotaped Tr. Test. Of Paul Laskowski 34-36 [hereinafter Dodson's Resps. re: Laskowski Exs.].) This Court will consider these arguments at present as well. Although Dodson does not address Rule 408, Dodson states that Ford had knowledge of ignition switch fires, and has slanted and withheld this information, which is relevant to Dodson's claim that Ford failed "to remedy known defects." (Id. at 35.)
Both Rhode Island evidentiary rules and Rhode Island case law govern the admissibility of the settlement agreement. First, Rule 408 of the Rhode Island Rules of Evidence addresses the admissibility of compromises and offers to compromise. The rule states, in pertinent part, that "[e]vidence of . . . accepting . . . valuable consideration in compromising . . . a claim which was disputed . . . is not admissible to prove liability." R.I.R. Evid. 408. The rule goes on to clarify that such exclusion is not required when the settlement "evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Id.
Our case law speaks more broadly, beyond the limited purpose of proving liability, about the admissibility of settlement evidence. "Rhode Island law recognizes that offers to compromise and evidence of settlement negotiations generally are not admissible into evidence." Votolato v. Merandi, 747 A.2d 455,461 (R.I. 2000) (citations omitted). In Votolato, the Rhode Island Supreme Court
 note[d] and caution[ed] that the admission of settlement evidence for non-damage issues continues to be guided by the calculus of Rule 403, which states that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or such considerations as confusion of the issues, misleading the jury, and undue delay, among others.
Id. at 462. In light of Rule 408's language and the court's guidance in Votolato, this Court is mindful that admissibility may turn on the purpose for which the settlement evidence is offered. This Court, therefore, must look to Dodson's purpose in seeking to admit the settlement agreement into evidence. SeeBoscia v. Sharples, 860 A.2d 674, 678 (R.I. 2004).
Dodson characterizes the importance of the settlement agreement in each of its three separate filings. First, in its objection to Ford's second motion, Dodson maintains that the settlement agreement is one in a group of documents containing "information as to the cause and effect of the fires in the ignition switches of Ford Motor vehicles." (Ford's Mot. re: Compls. Settlement 1.) Dodson continues that this document reflects Ford's knowledge of the ignition switch defect prior to the date of the Dodson vehicle fire. (Id. at 1-2.) Second, in its consolidated memorandum, Dodson states that the settlement agreement provides evidence that Ford "withheld material information from NHTSA about Ford's knowledge of the role played by the Fox ignition switch in causing fires." (Dodson's Consolidated Mem. 2.) According to Dodson, Ford's decision to withhold information and its decision not to act to warn owners and drivers or recall switches occurred prior to the Dodson vehicle fire. (Id.) Third, in response to objections concerning Laskowski trial-testimony exhibits, Dodson maintains that the settlement agreement provides evidence that Ford withheld evidence probative of Ford's failure to remedy known defects from NHTSA. (Dodson's Resps. Re: Laskowski Exs. 35.) In sum, Dodson asserts that the settlement provides evidence of cause and effect, Ford's knowledge of ignition switch fires, Ford's failure to act, and that Ford withheld information from NHTSA.
To the extent Dodson's assertions regarding its purpose for introduction of the settlement encompass liability, the settlement is inadmissible. See R.I.R. Evid. 408. Evidence of the cause and effect of ignition switch fires certainly falls within the ambit of liability. Additionally, both Ford's failure to act, either through notification or a comprehensive recall, and Ford's efforts to withhold information will influence a jury's determination of whether Ford is subject to liability for the Dodson vehicle fire. Thus introduction for these purposes is also impermissible under Rule 408.
To the extent Dodson's assertions regarding its purpose for introduction of the settlement go to prove notice or knowledge, this Court is bound by Votolato and Rule 403 of the Rhode Island Rules of Evidence. Rule 403 provides trial courts with the discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needles presentation of cumulative evidence." Further, "Rhode Island courts have adopted a consistently unsympathetic position toward parties who seek to take gratuitous advantage of agreements in which they took no part." Marr Scaffolding Co. v. FairgroundForms, 682 A.2d 455, 459 (R.I. 1996) (quoting McInnis v.Harley-Davidson Motor Co., 625 F. Supp. 943, 952 (D.R.I. 1956)).
After careful review of the settlement document itself, this Court finds that its relevance to the instant matter is limited at best. The three page settlement agreement, dated March 11, 1999, evidences a settlement between NHTSA and Ford. By its own terms, the settlement agreement was entered into "in order to avoid a protracted dispute and possible litigation." (Settlement Agreement 3.) While Ford acknowledges its failure to submit some documents to NHTSA, it contends such omission was inadvertent. (Id.) Further, Ford denies "that there was or is a safety-related defect in the subject vehicles involving the ignition switch and allegedly associated fires." (Id.) Finally, nothing in the settlement agreement itself encompasses the Dodson vehicle. Therefore, the settlement agreement's connection to Ford's notice or knowledge of the existence of a defect in the Dodson vehicle is marginal.
By contrast, admission of the settlement document, for any purpose, could unfairly prejudice Ford and inappropriately influence the jury. The jury may conclude that Ford's payment of $425,000 reflects responsibility for steering column and under-dash fires. Dodson's efforts to admit the NHTSA-Ford settlement agreement for notice or knowledge purposes creates the significant danger of unfair prejudice and jury confusion as the jury may infer that the settlement agreement evidences Ford's acceptance of responsibility for ignition switch fires.
In evaluating the admissibility of settlement evidence, the court in Votolato warned of "camouflaged causation evidence."747 A.2d at 463 (quoting McInnis v. A.M.F., Inc., 765 F.2d 240,248 (1st Cir. 1985)). Admission of the settlement agreement for notice purposes, in this matter, would be the admission of causation evidence in disguise. Accordingly, this Court finds that the settlement agreement's marginal relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See R.I.R. Evid. 403; Boscia v. Sharples, 860 A.2d 674, 678 (R.I. 2004) (quoting Wells v. Uvex Winter Optical, Inc., 635 A.2d 1188,1193 (R.I. 1994)). This Court need not reach Ford's relevance and hearsay arguments as Ford's Rule 408 and Rule 403 arguments are persuasive and dispositive.
For all of the aforementioned reasons, this Court grants Ford's motion in limine to exclude evidence of the NHTSA settlement agreement. The settlement document is inadmissible at trial, and no reference shall be made to it or the settlement itself.
 III. Ford's Motion In Limine to Exclude Evidence of NHTSA's and Transport of Canada's Investigations Concerning Steering Column and Under-Dash Fires and Ford's Subsequent Recalls
By its third motion, Ford moves to exclude "Evidence Of Irrelevant NHTSA Transport Of Canada Investigations And Ford Recalls." Ford attaches, as Exhibit A, a November 29, 1995 Ford of Canada recall notice with corresponding attachments, for a total of six pages. Exhibit B contains an April 24, 1996 Ford Service Recall Bulletin and attachments, totaling nineteen pages. The first page of each exhibit contains the same reason for recall: "[o]n some of the affected vehicles, a short circuit could develop in the ignition switch that could lead to overheating, smoke, and possibly fire in the steering column area of the vehicle. The condition may occur while the vehicle is in use or unattended." The parties do not dispute that the Dodsons' 1982 Crown Victoria was not among the vehicles Ford recalled.
Ford, by this motion, seeks exclusion of three different groups of documents: (1) NHTSA investigations; (2) Transport of Canada Investigations; and (3) recall evidence. Although this Court agrees with Dodson's characterization that Ford does not "specify particularly what it seeks to preclude," it is clear to this Court that Ford seeks exclusion of two distinct types of evidence. (Dodson's Consolidated Mem. 9.) The first category of evidence is governmental investigations performed by NHTSA in the United States and Transport of Canada in Canada. The second category is recall evidence. Since different evidentiary standards apply to each category, and Ford only attaches recall documents to its motion, this Court presently will entertain only the portion of Ford's motion seeking exclusion of recall evidence.
The admissibility of recall notices is a complex issue. Discussing the admissibility of recall evidence, Frumer and Friedman reveal that:
 [w]hile many courts allow recall notices into evidence, others do not. It is often a close question whether a particular recall letter or specific evidence of a recall will assist or hinder a jury in its determination of liability and whether what one court has called "grave prejudice" of a recall letter will be outweighed by the probative value of the recall evidence. In making these determinations, moreover, the courts will look not only to the rules of evidence but to public policy arguments as well.
Louis R. Frumer Melvin I. Friedman, Products Liability § 57.05 (2002). As the Rhode Island Supreme Court has not yet addressed the admissibility of recall evidence, this Court must look to other jurisdictions for guidance.[1] In addition to the issues courts face when addressing the admissibility of recall evidence, the instant case presents the added fact that the Dodson vehicle was not among those recalled by Ford. Dodson urges this Court to conclude that although not included in the recall, the Dodson vehicle should have been part of it.
Prior to recall evidence being admitted, Dodson must overcome several hurdles. First, to establish the relevance of the recall evidence, "the plaintiff must lay a proper foundation, independent of the recall itself, establishing that a defect existed in the vehicle." Pesce v. GMC, 939 F. Supp. 160, 165
(D.N.Y. 1996) (citing Calhoun v. Honda Motor Co.,738 F.2d 126, 133 (6th Cir. 1984); Farner v. Paccar Inc., 562 F.2d 518,525-526 (8th Cir. 1977)). In Pesce, independent proof of a defect was established through the testimony of both fact witnesses and expert witnesses. Pesce, 939 F.Supp. at 165. In contrast, the court in Calhoun held that admission of the recall letter was reversible error as the "recall letter was placed into evidence before independent evidence as to defect and causation were established." Calhoun, 738 F.2d at 130, 133. The court in Farner found "sufficient foundation for the admission of the recall letter" based on evidence of broken springs, testimony of two local truckers, and a chief engineer's memoranda. Farner, 562 F.2d at 526. Thus, Dodson must present evidence, independent of Ford's recall, establishing a defect in the Dodson ignition switch before this Court considers admission of recall evidence.
Second, Dodson must establish that the defect in the phenolic-based FOX-type ignition switch originally installed in the Dodson vehicle was the same or similar to the defect that was subject to the recall. See Santos, 715 N.E.2d 47 (affirming trial court's decision to admit recall evidence of 1984 and 1985 model year minivans in a case involving a 1986 model year minivan where evidence had been introduced to show that Chrysler was on notice of a potential problem); Nay v. General Motors Corp.,850 P.2d 1260 (Utah 1993) (affirming trial court's decision to exclude recall evidence of the steering gear from a 1973 model year automobile in a case involving a 1986 model year truck with a different steering gear layout); Gordon Harper Harley-DavidsonSales, Inc. v. Cutchin, 350 S.E.2d 609 (Va. 1986) (affirming trial court's decision to admit into evidence a portion of a service bulletin that did not include the serial number of the vehicle in the accident where it was undisputed that the vehicle had the same design and assembly as the vehicles in the service bulletin); Carey v. Gen. Motors, 377 Ma. 736 (1979) (affirming trial court's decision to admit a letter suggesting recall of a defective fast idle cam similar to the fast idle cam in the plaintiff's vehicle). To achieve this task, Dodson must establish that the Dodson ignition switch and the recalled ignition switches functioned in the same or in a similar manner.
Third, Dodson must overcome Ford's Rule 403 arguments. Ford maintains that even if Dodson meets her burden to show the relevance of the recall evidence, its admission would both confuse and mislead the jury as well as unfairly prejudice Ford. Dodson does not address these points in either her Objection or her Consolidated Memorandum.
This Court has already found that Kayton's testimony provides the jury with evidence sufficient to support a jury finding that the mechanism identified as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches. Thus, the recall evidence may be admitted assuming Dodson lays a sufficient foundation for its admission through Kayton, provided that the recall evidence passes muster under Rule 403. This Court is persuaded that if, indeed, there is evidence present from which a jury could properly find that the mechanism identified as the cause of fires in Minlon-based FOX-type ignition switches is the same in phenolic-based FOX-type ignition switches, the probative value of Ford's voluntary recall of the Minlon-based FOX-type ignition switches outweighs any accompanying prejudice to Ford. Accordingly, this Court denies Ford's motion to exclude the recall evidence. Nevertheless, no mention of the recall evidence shall be made until Dodson has met its burden, as delineated above, and this Court is afforded the opportunity to further address the issue outside of the hearing of the jury. Furthermore, the parties' arguments pertaining to NHTSA investigations and Transport Canada investigations will be addressed if and when Dodson seeks to introduce such evidence and Ford makes clear what evidence it seeks to exclude.
[1] This Court is aware of Farrell v. Connetti Trailer Sales,Inc., 727 A.2d 183 (R.I. 1999) and Ferro v. Volkswagen of Am.,Inc., 588 A.2d 1047 (R.I. 1991). Both cases mention recall evidence, but neither case discusses the standard for its admissibility.