**RICHMOND SQUARE CAPITAL CORPORATION**

v.

**Richard MITTLEMAN et al.**

**No. 99–551–Appeal.**

Supreme Court of Rhode Island.

June 21, 2001.

Lauren E. Jones, Vincent A. Indeglia, Providence, for Plaintiff.

John T. Walsh, Jr., Providence, Thomas F. DeVincke, Wakefield, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

We consider here whether documents memorializing a settlement of a dispute between a lender and a guarantor over a mortgage-loan default should have been admitted into evidence during a jury trial on the lender's damage claim against its lawyers for alleged legal malpractice in connection with the making of the loan. The defendants, Richard Mittleman (Mittleman) and the law firm of Cameron & Mittleman (collectively, defendants or the lawyers), appeal from a damages judgment after a jury found them liable to their client, lender Richmond Square Capital Corporation (Richmond Square), for legal malpractice. On appeal, the lawyers contend that Richmond Square failed to prove its actual damages and that the trial justice erred in excluding evidence concerning a settlement between Richmond Square and a guarantor of the loan that, if admitted, allegedly would have reduced or negated Richmond Square's damages arising from the lawyers' legal malpractice. This Court directed the parties to show cause why the issues raised should not be summarily decided. After reviewing the parties' written submissions and considering their oral arguments, we conclude that they have not shown such cause. Thus, we proceed to decide this appeal at this time.

As we noted in a previous opinion addressing a statute-of-limitations issue in this case, "[t]he plaintiff retained defendants to represent its interest in connection with a loan to be made to Parking Corporation of America, and to be secured by mortgages on several pieces of real estate, including the Shepard Building located in downtown Providence." *Richmond Square Capital Corporation v. Mittleman*, 689 A.2d 1067, 1068 (R.I.1997) (mem.). Harold Schein, plaintiff's president, testified that Mittleman assured him that Richmond Square would have a first-position mortgage on the Shepard Building property. The loan amount totaled $1.45 million. David Golden, president of the borrower, Parking Corporation of America (Parking), signed the promissory note for the loan on behalf of Parking and he also personally guaranteed the loan. Schein testified that he believed the Shepard Building was free and clear of encumbrances and that he would not have made the loan if he knew there were outstanding taxes due and owing on the property. As a Small Business Investment Corporation, Richmond Square had certain lending limits. Including the amount of unpaid taxes in the loan granted to Parking would have put Richmond Square over its lending limit. Schein testified that Mittleman never told him about the unpaid taxes on the property until after Richmond Square entered into the loan.

"On June 28, 1990, the loan closing took place and all of the necessary loan-mortgage documents were executed, and later recorded." *Richmond Square*, 689 A.2d at 1068. A few months later, however, in September 1990, Parking failed to make required payments under the loan. Schein discussed with attorney Mittleman the possibility of instituting foreclosure proceedings. "[O]n December 6, 1990, plaintiff received mail notice of a city of Providence tax sale scheduled for the Shepard building on December 28, 1990 and listing the delinquent taxpayers as Jagdish Sachdev and Alan Brier." *Id.* Schein testified that he was shocked to receive such a notice because he thought all taxes had been paid by the previous owner. He sought an explanation for the notice from Mittleman. Mittleman responded that he "would take care of it." *Id.* A day or two later Mittleman asked Richmond Square to send a check for $79,493.34 to the City of Providence to pay for the unpaid 1989 taxes. Richmond Square promptly paid this amount on December 19, 1990, to prevent a public auction of its collateral. Mittleman also worked out payment arrangements for the 1990 taxes. Because the closing took place in June 1990, approximately half the $95,000 figure was chargeable to the previous owners of the Shepard building. Richmond Square knew that the other half of the 1990 taxes would be due for the part of the year remaining after the closing. Schein testified that Golden and Parking were supposed to pay both the back taxes and the current 1990 taxes.

In 1991 and 1992 Mittleman continued to represent Richmond Square in legal matters. In February 1991, Richmond Square instituted a foreclosure on the Shepard building property. A Richmond Square subsidiary, Westminster Parking, bought the property for $200,000. Approximately a week after the foreclosure, Richmond Square entered into a settlement with Golden concerning Golden's loan guaranty. In exchange for Richmond Square releasing Golden from his guaranty, Golden agreed not to contest the foreclosure on the Shepard building property, paid Richmond Square $40,000, gave it a deed in lieu of foreclosure for property on Bassett Street, and granted it a right to participate (with other lenders) in a promissory note of $600,000.

On December 17, 1993, Richmond Square filed this legal malpractice action. Richmond Square alleged in the complaint that Mittleman and his law firm had committed legal malpractice by not informing Richmond Square about the outstanding taxes owed on the Shepard building property and by assuring Richmond Square that it had an unencumbered first-mortgage position on the property. Subsequently, the lawyers filed a motion for summary judgment on statute-of-limitations grounds. A motion justice granted this motion. In *Richmond Square*, this Court reversed, holding that a genuine issue of material fact existed about whether Richmond Square had discovered that the Shepard building property had a valid tax lien on December 17, 1990, or after that date. *Richmond Square*, 689 A.2d at 1069. If Richmond Square did not discover the validity of the tax lien until on or after December 17, 1990, then its complaint would be timely under the statute of limitations. After the remand to Superior Court, the case proceeded to trial.

At trial Mittleman disputed Schein's contention that Mittleman failed to disclose the unpaid taxes before the closing. Mittleman testified that a few hours before the closing of June 28, 1990, he informed both Schein and Schein's advisor, Arnold Kilberg, that there was not enough money in the loan to cover the unpaid taxes on the Shepard building property. According to Mittleman, both Schein and Kilberg

stated that Richmond Square should go forward with the closing anyway, because Golden possessed sufficient assets and collateral to cover any default. Many other witnesses also testified at trial, but it appears that the central issue for the jury to resolve was the conflicting testimony of Schein and Mittleman concerning whether Schein knew about the unpaid back taxes. The jury apparently credited Schein's testimony because it returned a verdict in Richmond Square's favor for $127,182.16.[1] In its answer to specific interrogatories, the jury found that Richmond Square had not discovered the tax liability for the previous owners until December 17, 1990, at the earliest. The lawyers renewed their motion for judgment as a matter of law and filed a motion for a new trial. The trial justice denied the motions and defendants appealed.

The key issue on appeal concerns the effect of the post-foreclosure settlement agreement between Richmond Square and Golden on the jury's damage award. During the cross-examination of Schein at trial, the lawyers' trial counsel sought to question Schein about the settlement agreement that Richmond Square had executed, thereby releasing Golden from his obligations under the loan guaranty. During cross-examination it became evident that Richmond Square had received several properties, plus $40,000 from Golden, in the settlement. Schein admitted that the purpose of the settlement was for Golden "[t]o pay as much of the debt as it might cover." However, at one point, the trial justice cautioned the lawyers' counsel that he should not recite anything from the settlement agreement itself. Later on, the trial justice refused to allow the lawyers' counsel to question Schein in detail about

the settlement agreement and mutual releases. Counsel attempted to admit the settlement documents as full exhibits but the trial justice refused to admit them, ruling that they were irrelevant because they did not relate to the question of whether Mittleman's alleged negligence in not informing Richmond Square about past due taxes on the Shepard building caused it to incur an obligation to pay taxes.

On appeal, the lawyers argue that Richmond Square failed to prove it was damaged by Mittleman's alleged negligence. Therefore, the lawyers contend, the trial justice erred in denying their motion for judgment as a matter of law. They insist that Richmond Square was required to establish actual damages so it could recover against them on its legal malpractice action. They assert that Richmond Square's failure to offer into evidence any valuation of the settlement with Golden was fatal to its case because the value of the settlement could have given it a net gain or, at very least, reduced the damages it claimed to have suffered because of their negligence. Also, the lawyers contend, the trial justice erred in excluding the settlement documents and releases pertaining to Richmond Square's settlement with Golden. These documents, they argue, would have helped the jury analyze the value of the consideration given by Golden to determine whether the value was equal to or in excess of all Golden's original obligations under the loan, including the taxes. Because the jury was not allowed to review and consider the settlement documents and corporate tax returns, it was not in a position, the lawyers aver, to determine whether the settlement resulted in Richmond Square's suffering no damages because of the unpaid back taxes.

1. This includes the $79,493.34 amount for the 1989 tax bill and half of the 1990 tax bill ($95,377.65).

The lawyers further submit that Richmond Square failed to mitigate its damages.

Finally, the lawyers contend that Richmond Square had a right to receive the amount of the tax payments from Golden pursuant to G.L.1956 § 34–11–22 (providing for recovery of unpaid taxes, among other items, as part of mortgagee's statutory power of sale). They posit that if the trial justice had allowed them to introduce the settlement documents and corporate tax returns into evidence, they would have demonstrated that Richmond Square, in fact, was reimbursed for its payment of the taxes through its settlement with Golden and that, notwithstanding the back-taxes payment and the expenses of foreclosure, Richmond Square still profited from the Golden settlement.

In response Richmond Square argues that the trial justice did not abuse his discretion in finding the settlement documents irrelevant because they do not specifically advert to the value of the properties and the other consideration that Golden provided to Richmond Square in the settlement. Therefore, Richmond Square argues, the documents by themselves were speculative and did not have probative value. It also argues that it incurred an unexpected front-end cost in having to pay the real-estate taxes to maintain its security over the property. It maintains that these taxes represented an additional cost to it, regardless of the outcome of the foreclosure on the mortgaged property. Richmond Square reiterates that most of the documents the defendants sought to admit did not have concrete numbers and the later sale of the Shepard Building was too far removed from the loan transaction to be relevant. It further argues that defendants have waived any challenge to the admission of the corporate tax returns—having failed to mark them for identification—or to the issue of liability.

We hold that the lawyers properly raised these issues before the trial justice. Also, they have challenged liability insofar as they argue that Richmond Square failed to prove actual damages. "A civil malpractice claim is, in essence, a negligence claim. In order to prevail on a negligence-based legal malpractice claim, a plaintiff must prove by a fair preponderance of the evidence not only a defendant's duty of care, but also a breach thereof and the damages actually or proximately resulting therefrom to the plaintiff." *Macera Brothers of Cranston, Inc. v. Gelfuso & Lachut, Inc.*, 740 A.2d 1262, 1264 (R.I.1999) (per curiam). "Failure to prove all three of those required elements[ ] acts[,] as a matter of law, to bar relief or recovery." *Vallinoto v. DiSandro*, 688 A.2d 830, 836 (R.I. 1997). Thus, Richmond Square here was required to prove that "but for" attorney Mittleman's negligence, it would not have incurred damages in paying the back taxes on the Shepard building. *See Macera Brothers*, 740 A.2d at 1264.

Richmond Square submitted competent evidence that it suffered damages because of defendants' failure to notify Richmond Square about the unpaid-tax encumbrances on the Shepard building property. In considering defendants' motion for judgment as a matter of law, the trial justice was required to view the evidence in the light most favorable to Richmond Square and deny the motion if reasonable persons could draw different conclusions from the evidence. *See Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.1998). Here, reasonable persons could conclude that Richmond Square suffered damages when it incurred the unforeseen expense of paying the back taxes because Mittleman was negligent in failing to discover the existence of this encum-

brance before the loan closing and disclose it to his client. Regardless of the loan's ultimate fate, Richmond Square was forced to pay the back taxes to maintain its collateral for the loan to Parking and its status as a first-position secured lender. According to the testimony of Schein, Richmond Square would not have willingly paid the back taxes if it had been informed of these encumbrances by Mittleman before the closing. Thus, even if the borrower never had defaulted and the loan had proven to be profitable, Richmond Square would still have suffered damages because of the extra-added expense of the unpaid taxes.

■ With respect to the lawyers' assertion that Richmond Square failed to mitigate damages, defendants bore "the burden of proving that the plaintiff failed to adequately mitigate his or her damages." *Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury,* 603 A.2d 726, 729 (R.I.1992). Although Richmond Square promptly sought to mitigate its damages vis-à-vis the borrower's loan payment default by foreclosing on the Shepard building property and entering into a settlement with Golden, the lawyers argue that the trial justice's ruling barring introduction of the Golden settlement documents precluded them from showing that the value of the Golden settlement exceeded the debt owed on the defaulted loan, and thereby reduced or eliminated Richmond Square's damages with respect to payment of the back taxes.

■ "It is well settled that [this court] shall not disturb a trial justice's admission or exclusion of evidence on relevancy grounds absent a showing by the aggrieved party that the trial justice abused his or her discretion." *Caranci v. Howard,* 708 A.2d 1321, 1325 (R.I.1998); *see also Votolato v. Merandi,* 747 A.2d 455, 462 (R.I.2000). We conclude that the trial justice did not abuse his discretion in re-

fusing to admit the settlement documents. First, the settlement documents themselves did not indicate that the properties and other consideration specified therein covered the back taxes that were owed. Second, the settlement documents and corporate tax returns were inadmissible in any event to disprove plaintiff's damages because, even if the consideration specified therein had covered all or any portion of the back taxes plaintiff had paid, the value of that settlement would not have reduced the damages plaintiff claimed as a result of paying the back taxes. This was an expense that plaintiff had to incur regardless of the ultimate fate of the loan or the value of whatever settlement it was able to negotiate. Indeed, the failure of the loan and the settlement of the claim against Golden were unrelated to the malpractice that resulted in plaintiff having to pay the taxes in question. Third, because the settlement documents did not contain values of the properties provided, they were insufficiently probative for admission in any event and could have led the jury to speculate impermissibly about the individual value of the properties provided therein and, thus, about the value of the total consideration Richmond Square received via the settlement.

■ Finally, even if the lawyers had appraisals or other evidence concerning the properties' value (and the record contains no indication that they did), this evidence should not have been admitted to show that Golden had reimbursed Richmond Square for the tax payments because of the collateral source doctrine. This doctrine

> "mandates that evidence of payments made to an injured party from sources independent of a tort-feasor are inadmissible and shall not diminish the tort-feasor's liability to the plaintiff. * * * 'The rationale of this rule is

that the injured person is entitled to be made whole, since it is no concern of the tort-feasor that someone else completely unconnected with the tort-feasor has aided his victim * * *,' and the 'wrongdoer, responsible for injuring the plaintiff, should not receive [this] windfall.' " *Gelsomino v. Mendonca*, 723 A.2d 300, 301 (R.I.1999) (quoting *Oddo v. Cardi*, 100 R.I. 578, 584–85, 218 A.2d 373, 377 (1966)).

In any event, the documents in question did not contain any indication of the value of the properties provided in the settlement. Even if the lawyers had made an offer of proof indicating that the total value of the settlement exceeded the unpaid loan amount and covered (or at least reduced) the back taxes Richmond Square had paid—and they failed to do so—such evidence would not have served to reduce Richmond Square's damages for the unpaid taxes.

The lawyers cite *Katzenberger v. Bryan*, 206 Va. 78, 141 S.E.2d 671, 677 (1965) for the proposition that the trial justice should have allowed the admission of the settlement documents to prevent a duplication in recovery. However, in *Katzenberger*, the settlement amount was clearly defined. *Id.* In this case, the documents excluded from admission did not clearly indicate the value of the consideration for the settlement. Moreover, "unless evidence of a settlement is relevant to some issue, other than the quantum of damages, a trial justice is instructed to bar the admission of such evidence and subsequently to make the appropriate reduction in any jury award rendered in favor of the plaintiff." *Votolato*, 747 A.2d at 462. Here, the trial justice could not have reduced the jury award on account of the settlement because the evidence in the record did not specifically indicate that the value of the settlement with Golden exceeded the amount of the unpaid loan and covered, or at least reduced, the back-tax payments that plaintiff had paid. In short, the evidence proffered by the lawyers did not allow either the jury or the trial justice to calculate the value of the consideration from the settlement. Moreover, even if the lawyers had offered to prove the value of this consideration, the collateral-source doctrine prevented this consideration from reducing or eliminating plaintiff's damages. *See id.* at 461–62.

These same considerations apply to the corporate tax documents. Further, by failing to request that these documents be marked for identification, the defendants have waived any ability to challenge the trial justice's failure to admit them into evidence because we have no basis to assess their probative value. The lawyers also refer this Court generally to other issues contained in their post-trial motions. But issues which have not been fully developed in argument to this Court are not subject to our review. *See State v. Charette*, 688 A.2d 1286, 1289 n. 2 (R.I.1997). Because the lawyers' mere general reference to these other issues precludes our meaningful review of them, we also deny their appeal on these remaining points.

## Conclusion

The trial justice did not abuse his discretion in precluding the admission of settlement documents and corporate tax returns during the jury trial, and in refusing to offset or reduce the damages that the plaintiff proved during the jury trial. For the above reasons, we deny the defendants' appeal and affirm the judgment in favor of the plaintiff.