**Supreme Court**

No. 2015-298-Appeal.
(PC 11-7329)

Michael F. Rose, Jr. et al.          :

v.                    :

Stephen M. Brusini et al.         :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael F. Rose, Jr. et al.          :

v.          :

Stephen M. Brusini et al.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  This case came before the Supreme Court on appeal by the plaintiffs, Michael F. Rose, Jr. and RC&D, Inc. (collectively plaintiffs), from a decision of the Superior Court granting the defendants' motion for summary judgment in favor of Attorney Stephen M. Brusini and the law firm Orson & Brusini Ltd. (collectively defendants).  The plaintiffs argue that the hearing justice erred when he concluded that there was no evidence of proximate cause linking the defendants' alleged negligence and any damages the plaintiffs may have suffered, and that Rose's own conduct was the proximate cause of his damages.  The matter came before this Court for oral argument on November 2, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided.  After considering the oral and written arguments of the parties, and after a thorough review of the record, we are of the opinion that cause has not been shown and that this case should be decided at this time without further briefing or argument.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

On January 7, 2004, Rose and David Egan formed a closely held corporation, RC&D, Inc. RC&D provided specialized construction services, equipment, and personnel for environmental restoration and related land development in the New England region. At first, Rose and Egan were equal owners of the corporation. The ownership percentages later changed, however, and Egan acquired 51 percent of the issued shares of RC&D stock and Rose held the remaining 49 percent. Egan was responsible for office administration and keeping and maintaining the financial records while Rose supervised field construction operations. Rose had very little personal involvement in managing or overseeing RC&D's finances and he did not have access to the company's books and records, which Egan kept password-protected through a software program called Quickbooks. In 2007 the two began discussing Rose's buyout of Egan's 51 percent interest in RC&D. In August 2008, after negotiations became contentious, Rose engaged defendants to represent him in connection with the buyout.

By December 14, 2008, negotiations had progressed to a point where defendants were able to prepare a draft purchase and sale agreement (P&S) and circulate it to the parties. One component of the P&S involved Rose's purchase of Egan's shares of stock in RC&D and the second component involved a distribution from RC&D to Egan of the company's profits earned through December 31, 2008. On December 16, 2008, Egan's counsel sent a "redlined" version of the first draft of the P&S to defendants. Two days later, Egan finally sent an email to Rose containing some information about RC&D's finances, including balance sheets, a projection as of December 31 of assets and liabilities, and a schedule of accounts receivable.

On December 19, 2008, Brusini advised Rose not to sign the P&S because Egan was refusing to provide critical financial information regarding RC&D. Later that day, during a conference call with the parties, Brusini reiterated his advice that Rose should not execute the P&S. And again, on December 22, 2008, Brusini called Rose to tell him the same thing, but Rose was intent on going forward.

By email, on December 23, 2008 at 9:55 a.m., Brusini sent a marked-up draft of the P&S to, among others, Egan's counsel and Rose. At 10:06 a.m. the same day, Brusini sent a letter to Rose by email. The letter recounted their telephone conversations from December 19 and December 22 and specified, "I cannot recommend and do not recommend that you [Rose] sign the agreement as revised by [Egan's counsel]" because Rose had not been involved in the finances of the company and did not know what the finances of the company were. The letter continued:

> "That said, I am aware that you are willing to take the risks outlined above and the risks generally posed by [Egan's counsel's] revisions, and that you are anxious to close these transactions as soon as possible. With that in mind, in the red-lined version that I sent to you earlier this morning I have attempted to make at least a few changes to [Egan's counsel's] version to provide you with some basic protections."

The amended version of the P&S referred to in the letter included a "True-up Clause" to protect Rose in order "to capture post-closing any amount paid to Mr. Egan in connection with the buyout that, for any reason, [was] improper or incorrect."

The closing on the buyout took place on January 6, 2009, and the distribution amount ($1,204,695.75) was paid in full to Egan. After the closing, Rose finally gained full access to RC&D's financial books and records, including Quickbooks. The financial books and records revealed that Egan, in the very limited information he had provided to Rose preclosing, had

- 3 -

overstated the accounts receivable and assets and had understated the accounts payable, thereby resulting in a considerably higher 2008 year-end distribution to Egan. According to the company's books and records, the distribution paid by RC&D to Egan was approximately $584,695.70 more than what Egan was entitled to under the terms and conditions of the P&S.

### Rose and Egan Litigation

In January 2010, Egan filed a complaint against plaintiffs after Rose declined to satisfy the remaining balance from the buyout. Rose and RC&D answered and filed counterclaims against Egan, arguing that Egan was required to return the overpayment to RC&D, based upon the True-up Clause that Brusini had assured Rose he could rely upon should the distribution paid to Egan be found to exceed his entitlement. However, that litigation encountered some rough sailing; a justice of the Superior Court declared that "there [was] an ambiguity under the language of the agreement," and granted partial summary judgment in favor of Egan with respect to at least two counts of his complaint. After Rose incurred over $300,000 in litigation fees and expenses, the parties entered into a settlement agreement on November 3, 2011.

### The Malpractice Action

On December 30, 2011, plaintiffs filed suit against defendants, alleging professional negligence and breach of contract. Rose's primary argument was that defendants breached a duty that they owed to Rose when they failed to advise him to invoke the statutorily enforceable rights and remedies available to shareholders pursuant to G.L. 1956 chapter 1.2 of title 7 of the Rhode Island Business Corporations Act (Disclosure Act), which would have provided access to RC&D's books and records.[1] The plaintiffs further argued that defendants negligently drafted

_____

[1] General Laws 1956 § 7-1.2-1502 reads in pertinent part as follows:

the True-up Clause, thus resulting in their inability to recover the overpaid amount in the Egan litigation.

In time, defendants filed a motion for summary judgment, arguing that Rose could not demonstrate that they were liable to Rose because he had failed to follow Brusini's clear and documented advice, which explicitly warned against signing the P&S. In that correspondence, Brusini outlined his concerns about the deal and specifically identified that "due to these concerns, I [Brusini] cannot recommend and do not recommend that you [Rose] sign the [P&S]." Nevertheless, Rose went forward with the buyout despite the letter and in the face of Egan's

> "(a) Each corporation shall keep correct and complete books and records of account * * *. Any books, records, * * * may be in written form or any other form capable of being converted into written form within a reasonable time.
>
> "(b) Any * * * shareholder * * *, upon written demand stating the purpose for the demand, has the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account * * * and to make extracts from those books and records of account * * *.
>
> "(c) Any officer or agent who, or a corporation which, refuses to allow any shareholder * * * to examine and make extracts from its books and records of account * * * for any proper purpose, is liable to the shareholder * * * in a penalty of ten percent (10%) of the value of the shares owned by the shareholder, * * * in addition to any other damages or remedy afforded him or her by law.
>
> "(d) Nothing contained in these provisions impairs the power of any court of competent jurisdiction, upon proof by a * * * shareholder * * * to compel the production for examination * * * of the books and records of account * * *.
>
> "(e) Upon the written request of any * * * shareholder * * * the corporation shall mail to the * * * shareholder * ** its most recent financial statements showing in reasonable detail its assets and liabilities and the results of its operations."

continued refusal to provide financial information. As a result, defendants asserted that the proximate cause for any alleged damages was Rose's own decision to proceed with the buyout against his counsel's advice.

The hearing justice, in a bench decision, granted defendants' motion for summary judgment. The hearing justice found that defendants had a duty to plaintiffs, and, based on the affidavit of Attorney Karen A. Pelczarski, that there was a genuine issue of fact as to whether there was a breach of that duty.

However, when determining whether there was a genuine issue of material fact as to proximate cause, the hearing justice focused on two documents—Brusini's December 23, 2008, letter and Attorney Pelczarski's affidavit, which had been offered in opposition to the motion for summary judgment. The hearing justice indicated that, while Attorney Pelczarski's affidavit repeatedly referred to lack of care, skill, diligence, and knowledge, she never used the words "proximate cause" in her affidavit. He further specified that there were many possibilities for what might have occurred had defendants advised Rose of the Disclosure Act, concluding that it would require "pure conjecture" to determine what the outcome of the transaction would have been had defendants notified Rose of the Disclosure Act. The hearing justice went on to say, "but what is not conjecture is that if Mr. Rose had taken defendants' recommendation and refused to sign the agreement, he would not have incurred the loss of which he now complains." As for the ambiguity that was noted by the trial justice in the Egan litigation about the True-up Clause, the hearing justice specified that ambiguity in a document does not equate to legal malpractice. Moreover, the hearing justice indicated that the case was settled before the efficacy of the True-up Clause was litigated; therefore, there was no basis to conclude whether the language employed was effective or ineffective.

The hearing justice concluded that plaintiffs had not produced any evidence to suggest that their legal position was somehow compromised as a result of Brusini's advice and that the undisputed evidence demonstrated that Rose disregarded Brusini's counsel and went forward with the buyout without having access to the financial information. He further noted that, had Rose simply followed Brusini's instructions, the alleged damages would not have occurred. He avowed that, in order to find a causal connection between Brusini's alleged breach and Rose's overpayment in the buyout, a factfinder would be forced to speculate about what would have happened had Rose been advised of his statutory rights. The hearing justice concluded that the undisputed facts before the court were susceptible to just one inference: that Rose's decision to go forward with the buyout despite Brusini's advice recommending that he not sign the P&S was the cause of Rose's harm. Significantly, however, the hearing justice did not refer to a separate affidavit that Rose himself had submitted in opposition to the motion for summary judgment. After judgment entered on behalf of defendants, Rose timely appealed.

## II

### Standard of Review

"This Court reviews <u>de novo</u> a trial justice's decision granting summary judgment." <u>Sola v. Leighton</u>, 45 A.3d 502, 506 (R.I. 2012) (quoting <u>Lynch v. Spirit Rent-A-Car, Inc.</u>, 965 A.2d 417, 424 (R.I. 2009)). "Summary judgment is an extreme remedy and should be granted only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" <u>Plunkett v. State</u>, 869 A.2d 1185, 1187 (R.I. 2005) (quoting <u>Wright v. Zielinski</u>, 824 A.2d 494, 497 (R.I. 2003)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party

reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008) (quoting Carlson v. Town of Smithfield, 723 A.2d 1129, 1131 (R.I. 1999)). The party opposing "a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Id. (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996)).

## III

## Analysis

On appeal, plaintiffs argue that the hearing justice erred when he determined there was no evidence of proximate cause arising from any alleged negligence of defendants and that any damage to plaintiffs was caused by Rose's casting away his attorney's cautions and warning and proceeding with the closing. Rather, plaintiffs maintain that the evidence establishes that, but for defendants' failure to advise them of their statutory right to access the books and records of RC&D, they would have demanded, received, and reviewed them, thereby avoiding postclosing litigation. Additionally, plaintiffs assert that defendants' negligence and their reliance on the negligently drafted True-up Clause contributed to their damages. Furthermore, plaintiffs argue that, because it is up to the factfinder to determine the issue of proximate cause, that issue is not amenable to summary judgment.

In his decision, the hearing justice found that Brusini's conduct was not causally connected to plaintiffs' alleged damages, determining that it would require the employment of

"conjecture and speculation" to conclude that Rose would have proceeded differently had he been advised of and counseled to make use of the statutory demand procedure.

This Court has held that "[i]n order to prevail on a negligence-based legal malpractice claim, a plaintiff must prove by a fair preponderance of the evidence not only a defendant's duty of care, but also a breach thereof and the damages actually or proximately resulting therefrom to the plaintiff." Ciambrone v. Coia & Lepore, Ltd., 819 A.2d 207, 211 (R.I. 2003) (quoting Richmond Square Capital Corp. v. Mittleman, 773 A.2d 882, 886 (R.I. 2001)). "Failure to prove all three of those required elements, acts as a matter of law, to bar relief or recovery." Vallinoto v. DiSandro, 688 A.2d 830, 836 (R.I. 1997).

To establish proximate cause, it must be shown "that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." Contois v. Town of West Warwick, 865 A.2d 1019, 1023 (R.I. 2004) (quoting English v. Green, 787 A.2d 1146, 1151 (R.I. 2001)). Furthermore, "[t]he causal connection between negligence and a plaintiff's injury must be established by competent evidence and may not be based on conjecture or speculation." McLaughlin v. Moura, 754 A.2d 95, 98 (R.I. 2000) (quoting Skaling v. Aetna Insurance Co., 742 A.2d 282, 288 (R.I. 1999)). Nevertheless, "proximate cause can be established by circumstantial evidence, and specific direct evidence of * * * proximate cause is not always necessary." Seide v. State, 875 A.2d 1259, 1268 (R.I. 2005) (quoting Martinelli v. Hopkins, 787 A.2d 1158, 1169 (R.I. 2001)).

"Ordinarily the determination of proximate cause * * * is a question of fact that should not be decided by summary judgment." Munroe v. Cheaters Holding Corp., 808 A.2d 645, 646 (R.I. 2002) (quoting Splendorio v. Bilray Demolition Co., 682 A.2d 461, 467 (R.I. 1996)).

> "However, one resisting summary judgment must assert 'sufficient facts to satisfy the necessary elements of his [or her] negligence

- 9 -

claim' and if a 'plaintiff fails to present evidence identifying defendants' negligence as the proximate cause of his [or her] injury or from which a reasonable inference of proximate cause may be drawn,' then summary judgment becomes proper." Splendorio, 682 A.2d at 467 (quoting Russian v. Life-Cap Tires Services, Inc., 608 A.2d 1145, 1147 (R.I. 1992)).

Furthermore, "when the facts are undisputed and are susceptible of but one inference, * * * the question [becomes] one of law for the court * * *." Geloso v. Kenny, 812 A.2d 814, 818 (R.I. 2002) (quoting Schenck v. Roger Williams General Hospital, 119 R.I. 510, 517, 382 A.2d 514, 518 (1977)). Nonetheless, we have repeatedly cautioned that "complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by a fact finding at the trial court * * *." Hall v. City of Newport, 138 A.3d 814, 820 (R.I. 2016) (quoting Berard v. HCP, Inc., 64 A.3d 1215, 1218 (R.I. 2013)).

In this case, the fulcrum is whether the hearing justice correctly decided that proximate cause could not be established based on the record before him. When he considered the motion for summary judgment that had been filed on behalf of defendants, the hearing justice was confronted by two affidavits in opposition to the motion. One of those affidavits was authored by an attorney expert, and it is fair to say that the subject of that document centered on the breach of the standard of care. The hearing justice fairly pointed out that it did not specifically address the issue of proximate causation.[2] However, it is our opinion that Rose's affidavit addresses the issue of proximate cause.

---

[2] Although we find no fault with the hearing justice's observation that Attorney Pelczarski's affidavit did not use the words "proximate cause," she did conclude that:

> "[b]ased on * * * [d]efendants' failure to advise Rose of the rights to obtain access to RC&D's books and records that were afforded to him under the Disclosure [Act], it is reasonable to infer under the facts presented that Rose would have misunderstood and would have acted under the mistaken belief that he was left with no

- 10 -

In his affidavit, Rose asserted that defendants did not advise him of his statutory rights under the Disclosure Act, but that if they had "advised [him] accordingly, [he] would certainly have promptly authorized and instructed them to exercise [his] rights and remedies under the Disclosure [Act]." He further swore that "[t]he issues Brusini mentioned [in his letter to Rose] were simply not important and/or relevant to whether or not [he] proceeded with the [b]uyout." Additionally, Rose specified that

> "[w]henever [he] told [his] concerns to Brusini about not having any access to the financial records and not being able to calculate corporate profits for determining the correct amount of the [d]istribution and/or to analyze any financial transactions in the months leading up to the closing, Brusini told [him] that [he] could rely upon [the True-up Clause] if it turned out that the [d]istribution amount paid to Egan was incorrect."

Rose averred that he did, indeed, rely on what Brusini told him. He maintained that "[a]t the very least, had [he] timely received the books and records pre-closing, there wouldn't have been any surprises post-closing regarding the [d]istribution amount," and he "could have, and would have, been able to avoid the [l]itigation and the substantial legal fees, costs and expenses [he] incurred in connection therewith."

Although the hearing justice repeatedly referred to Rose's arguments as "pure conjecture," it is our opinion that Rose submitted enough competent evidence to fend off the defendants' motion for summary judgment on a question of fact relating to the defendants' liability. Through his affidavit, Rose introduced sufficient evidence that would, at the least,

> choice but to either proceed with the purchase of Egan's shares, or to decline to purchase Egan's shares, without having the financial information necessary to make an informed decision about the Distribution."

It could be argued that Attorney Pelczarski used the appropriate language to indicate that a jury could draw a reasonable inference of proximate causation based on the facts produced.

- 11 -

allow a jury to reasonably infer the defendants' negligence as the proximate cause of his damages.  Moreover, when we review that evidence in the light most favorable to Rose, as we must, it is clear that granting summary judgment on this issue of fact was inappropriate.  We are of the opinion that the hearing justice overlooked the allegations in Rose's affidavit that raised issues of material fact on the issue of causation that must be submitted to a trier of fact.

## IV

## Conclusion

For the foregoing reasons, the plaintiffs' appeal is sustained and the final judgment appealed from is vacated.  The papers in this case are remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       Michael F. Rose, Jr. et al. v. Stephen M. Brusini et al.

**CASE NO:**             No. 2015-298-Appeal.
                        (PC 11-7329)

**COURT:**               Supreme Court

**DATE OPINION FILED:**  November 29, 2016

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                        Associate Justice Richard A. Licht

**ATTORNEYS ON APPEAL:**

                        For Plaintiffs:   Peter J. Brockmann, Esq.
                                          Frank F. Sallee, Esq.

                        For Defendants:  J. David Freel, Esq.
                                          Paul S. Callaghan, Esq.